Daniel, J.
 

 David Archer, late of Guilford county, in the year 1835, made his will in manner following:
 
 “
 
 I David Archer, of the county of Guilford, &c. being weak in body but of sound mind and memory, do make and ordain this my last will and testament, in the following manner and form, to-wit:
 
 First
 
 I give and bequeath unto my beloved wife, Sarah, all the use and profit of my home plantation during her widowhood; and it is my will, that all my household and kitchen furniture be continued in the possession of my beloved wife, and hereafter to be equally divided between her and my daughter, Sarah Ann Archer, and my daughter, Frances Archer. It is my will that my daughter, Sarah Ann, and my daughter, Frances, and my son, Washington D. Archer, have one hundred dollars each out of my personal estate. It is my will that my Jack, Green, be sold, and the money arising from said sale to be put to the use and benefit of
 
 *322
 
 raising and educating my son, Washington D. Archer. It is my ■will, that all my negro slaves should be continued in the possession of my beloved wife during her widowhood, or until my son, Washington D. Archer, arrives at the age of eighteen years. It is my will that all my negro slaves be sold or equally divided, and all the residue of my estate between my dear wife and all my children, namely, James, William, Elizabeth, Mary, Daniel, Abel, Sarah Ann, Frances, and my son, Washington D. Archer. I appoint my trusty son-in-law, Daniel Howren and Ithama -Hunt my executors, and my will is that all my just debts and formal expenses be paid by my executors. In witness whereof, (fee.” (dated the 1st of September, 1835.) “On consideration I further add, that it is my will that my negro man Bob be free and. at full liberty to go where and when he pleases at the death or marriage of my beloved wife. It is my will that my negro man Bob have the use and profit of ten acres of my land in the east corner adjoining Morris’ land. In. witness whereof, &c.” duly signed and attested by the same witnesses, but without date. Plis executors proved the will and qualified. The testator’s widow died in the year 1842 ; and, upon that event, the residue of the estate, both real and personal, became liable to be converted into money by the executors, according to the direction of the will. The testator directs this fund to be equally divided between his wife and all his children, namely, James, William, Elizabeth, Mary, Daniel, Abel, .Sarah Ann, Frances and Washington. At the time the will was made, three of the above-named children were dead, namely,. Elizabeth, William and David, and that fact was known to the testator. The question asked of the Court is, how is this fund to be divided ? The answer, is, that seven-tenth parts of it are to be divided equally among the children that were alive at the death of the testator and the administrator of the widow. The legacies and devises to the three dead children of the testator
 
 *323
 
 were void. And tiie children of such deceased children cannot take, by force of the act of Assembly,
 
 Rev. Stat: ch. 122, s.
 
 15 That section of the statute declares, that, when any person shall bequeath or devise to his
 
 child or children,
 
 and
 
 such
 
 child or children shall have died in the
 
 life-time
 
 of the testator, the said legacy or devise shall take effect and vest a title to the property described and mentioned in the issue of
 
 such
 
 child or children* Such a testamentary disposition must have lapsed, by the death of the legatee or devisee, during the life of the testator, were it not for the statute, 1
 
 Roper on Leg.
 
 320. The case before us is not within the definition of a lapsed legacy or devise, and therefore it is not aided by the above statute. The Legislature never thought of a case like this, and has not provided for it. It is a devise and bequest to no one
 
 in esse,
 
 or that can ever come
 
 in esse.
 
 It is1 a void devise and bequest,
 
 ab
 
 initio, of three-tenths' of the residuum of the slaves and land and other property, directed to be turned into money, and divided among the widow and the afore-named children. Three-tenths of the real estate, directed to be sold by the will, will therefore descend to the heirs at law of the testator; or, rather, three-tenths of the money, which shall be raised by the sale of the land, is to be considered in this Court as land, and will go to the heirs,• because, the objeets of the devise failing, the said money results to the heirs of the testator, as if it were land. It is apparent that the testator did not mean to- have his lands turned into money, out and out. He had particular objects in view,when he directed his land to be turned into money* Some of those objects failing, his intention is presumed,
 
 pro tanto, to' be
 
 defeated, and the money raised out of the land for those objects* shall not be considered to belong to his personal estate, but is, in this Court, considered as land, and shall result to the heirs at law of ihe: testator.
 

 It is a clear rule in equity, that- where real- estate is-
 
 *324
 
 directed to be converted into personal, for an
 
 express
 
 purpose, which fails, to consider the disappointed interest as realty (although the land has been sold,) and resulting to the heir. The rule equally applies to cases, where the real proceeds are blended and bequeathed with the personalty (after answering particular objects) ; and the context of the will affords no manifestation of the testator’s intention to convert the real into personal estate,
 
 out and
 
 out. 1
 
 Roper on Leg.
 
 363, 364, and the cases there cited.
 

 Three-tenths of the money arising from the sale of the slaves and other personal things, mentioned in the residuary legacy to his wife and nine named children, will be assets undisposed of, and, as the debts are paid, will go, according to the statute of distributions, to the testator’s next of kin. The residue was given by the will, to the testator’s wife and nine named children, that were alive at the testator’s death* and they took, as tenants in common, each his or her
 
 aliquot
 
 part of the fund. And that portion of the said fund, produced by the personal estate, which shall remain after
 
 the
 
 widow’s administra* tor and the six children, living at the death of the testator, or their representatives, or their assignees, have got their
 
 aliquot
 
 parts, must go to the next of kin.
 
 Roper on Leg.
 
 493 ; and this will include the widow, under the act of 1835,
 
 ch.
 
 10,
 
 Rev. Stat. ch,
 
 121,
 
 sec.
 
 12.
 

 Per Curiam.
 

 Decree accordingly.