No. 22,046.

MAY VANEK, a Minor, by T. P. GILE, Her Next Friend, *Appellee*, v. EDWARD VANEK (commonly known as EDWARD VARNICK). et al., *Appellants*.

SYLLABUS BY THE COURT.

1. WILL OF BACHELOR — *Subsequent Marriage — No Issue — Will Not Annulled—Rights of Widow*. The fact that the statute, in effect, makes the wife an heir of the husband (giving her also a right corresponding to dower, enabling her to hold half of his property notwithstanding any will he may have made) does not require the modification of the rule of the common law that the will of a bachelor is not revoked by his marriage unless issue results; the proviso that nothing in the section which enumerates the methods by which a will may be revoked by affirmative action "shall prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator" (Gen. Stat. 1915, § 11793), refers to the effect of some fixed and definite rule of either the statute or the common law, and does not authorize the courts to treat a will as annulled whenever such a change has taken place since its execution as to warrant a belief that if the testator had anticipated it he would have made a different disposition of his property.

2. SAME—*Construction of Statute*. The provision of the statute that "any married person having no children may devise one-half of his or her property to other persons than the husband or wife" (Gen. Stat. 1915, § 11791), applies to the operation of wills made before marriage as well as after.

Appeal from Republic district court; JOHN C. HOGIN, judge. Opinion filed April 12, 1919. Reversed.

*J. M. Livingood, T. D. Leedom*, both of Belleville, *I. M. Mahin, F. W. Mahin*, both of Smith Center, and *L. A. Hasty*, of Camp Green, N. C., for the appellants.

*W. D. Vance*, and *R. E. McTaggart*, both of Belleville, for the appellee.

The opinion of the court was delivered by

MASON, J.: On July 8, 1914, James Vanek, a bachelor, made a will bequeathing all his personal property to his brother, Edward Vanek, to whom he also devised a life interest in his realty, the remainder to vest in Edward's oldest son if he should be survived by one, otherwise in Hary Vanek, a nephew of James, upon his payment of $2,000 to Edward's widow. On February 29, 1916, the testator was married. He died on April 25, 1917. No issue resulted from the marriage. The will was admitted to probate. The widow, May Vanek, brought: an action in the district court against the claimants under the: will asking to have it, together with the order of probate, and. letters of administration that had been granted, set aside on. the ground that it had been revoked by the marriage. Judg-- ment was rendered in her favor, and the defendants appeal.

1. The principal question involved is whether or not, under our statutes, the subsequent marriage of a testator, without the birth of a child, may revoke a will. At common law, a will made by a single man was ordinarily revoked by his subsequent. marriage and the birth of issue, but not by the marriage alone. (40 Cyc. 1198, 1200.) Some courts affirm, and others deny, that where the statute makes the wife an heir of her husband (the word "heir" being used for convenience, although not strictly accurate) marriage, even without issue, should have the effect of revoking his antenuptial will. (Hoy v. Hoy, 93 Miss. 732, and cases cited therein, and in the note thereto in 25 L. R. A., n. s., 182.) To the citations in the note referred to on the negative of the proposition should be added the later case of Herzog v. Trust Co. of Easton, 67 Fla. 54, Ann: Cas. 1917 A, 201. In Toepfer v. Kaeufer, 12 N. M. 372, the reason- ing of the cases supporting the affirmative is adopted, although the will involved was that of a woman, so that the legal ques- tions presented were somewhat different. The courts which take the affirmative view do so mainly upon the ground that the bringing into existence of a new heir makes such a change in the testator's condition that it should be conclusively pre- sumed that he did not desire the previously executed will to re- main in force—that this reasoning was the basis of the com-

mon-law rule and should be given effect by modifying the latter so as to apply the same principle to the changed state of the law of descents and distributions. The courts which take the contrary view proceed largely upon the proposition that the reason why the mere marriage of the testator did not at the common law revoke the will was because the widow's dower gave her sufficient protection against the effect of any will of her husband, whenever made (1 Jarman on Wills, 6th ed., 144), and that the force of this consideration is not impaired by the abolishment of dower, where a right of substantially equal value is substituted for it. The decisions are to some extent affected by the precise character of the local statutes. For illustration, in one instance where the will was held to have been annulled, if the ruling had been to the contrary, the widow (as we interpret the opinion) would have received nothing whatever from her husband's estate. (*Morgan v. Ireland,* 1 Idaho 786.) Of the two lines of reasoning, that supporting the decisions holding that marriage alone does not annul the will appeals to us the more strongly, especially in view of the provisions of our own statutes.

To the section of our statute of wills which provides for express revocation is added: "but nothing herein contained shall prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator." (Gen. Stat. 1915, § 11793.) We do not interpret this proviso as intended to give to the courts the power to treat a will as revoked upon what might be deemed equitable grounds, whenever, between the execution of the will and the testator's death, a change has taken place such as to warrant the belief that if he had anticipated it he would have made a different disposition of his property. For instance, if a father should make a will leaving all his estate to his daughters, and nothing to his sons, for the avowed reason that they were able to take care of themselves, and thereafter one of them should be so permanently disabled as to become utterly helpless, a plausible argument could be made that the will was not consistent with the purposes of the father; but we cannot believe that the statute quoted would warrant a court in treating the will as revoked on that account. We construe the words "the revocation implied *by law* from subsequent changes in the condition or cir-

cumstances of the testator," as referring to the effect of some fixed and definite rule of either the statute or the common law, and not as contemplating a revocation by the application of uncertain analogies in accordance with what might appear to be the general policy upon which the legal rules were founded. This view is strengthened by the fact that our statute, in terms, alters the common law by a provision for the revocation of a will by the subsequent birth of a child of the testator. (Gen. Stat. 1915, § 11792.) The inference seems fair, that if the purpose had been to change the rule that a will is not revoked by the mere marriage of the testator, an express declaration would have been made to that effect. Of the proviso quoted it has already been said by this court (in a case, however, which did not directly involve the question here under consideration) :

"This provision clearly recognizes implied revocations, and is equivalent to an express enactment that the common-law rule as to implied revocations resulting from a change of condition or circumstances remains in force. Of course the rule can have no force as to such changes or conditions as are expressly provided for in the statute; but as to all others we must assume from the language of the provision quoted that the legislature had in mind the rules of the common law applicable to such cases, and therefore that it was intended that the marriage of a man and the birth of a child would operate to revoke a will previously made." (*Shorten v. Judd*, 60 Kan. 73; 80, 55 Pac. 286.)

It may be sound policy to maintain a rule that a will is revoked by the subsequent bringing into existence of an heir who, without such revocation, would be cut off entirely and receive no part of the testator's property; but where the new heir is by the law given a considerable share of the estate, regardless of the provisions of the will, an entirely different situation is presented. This distinction is emphasized by the recognition in the development of the common law of the principle on which it is founded. In several early English cases, which are cited in most discussions of the subject, it was declared that the birth of a child did not revoke the antenuptial will of its father, except where it undertook to dispose of all his property, because there would otherwise be something left for the new heir. (40 Cyc. 1199, note 8.)

2. The plaintiff also contends that, apart from any question of revocation, the widow is entitled to all the property owned

at his death by a childless husband who has made no will since his marriage. This contention is based on the provision of the statute that "Any married person having no children may devise one-half of his or her property to other persons than the husband or wife." (Gen. Stat. 1915, § 11791.) It is argued that this means that a married man (even if he have no children) may, while married, execute a will which shall transfer half of his property to some one other than his widow, regardless of any action on her part, but that it does not mean that a will executed by him before his marriage can have that effect. While the language chosen may seem to lend some countenance to the idea that its author had in mind a distinction between a will made after and one made before marriage, the history of the legislation seems to indicate the contrary. The section was enacted in 1883. In 1875 this court held that the widow of a childless husband was entitled to his entire estate, unless she elected to take under his will. (*Barry v. Barry,* 15 Kan. 587.) The statute then, as now, empowered any person of full age and sound mind to devise his property as he pleased, subject to other provisions of the act (Gen. Stat. 1915, § 11752), one of which was that one spouse should not will more than half of it away from the other. (Gen. Stat. 1915, § 11790.) So far, the purpose seemed to be to allow a husband to devise half of his property in any way that he saw fit, regardless of the action of his wife; but in the Barry case the further provision, that if the widow elected not to take under her husband's will she should retain such share of his property as she would have received had he died intestate (Gen. Stat. 1915, § 11798), was held to entitle her to all that he left, because it would have come to her if there had been no will. The law of 1883 was clearly intended to overcome the effect of this decision, and give some force to the will of a childless testator, even against the election of the surviving spouse, although if read literally it did not undertake to change the law, but merely declared it as it already existed. (*Noecker v. Noecker,* 66 Kan. 347, 71 Pac. 815; *Breen v. Davies,* 94 Kan. 474, 146 Pac. 1147.) Especially since a free interpretation is required in order to give the statute the effect clearly intended, we think violence would be done to its spirit if we were to treat the use of the phrase "any

married person . . . may devise" as limiting its scope to the effect of a will made after the marital relation had been assumed.

The judgment is reversed, and the cause is remanded with directions to render judgment for the defendants.