546

No. 29,495.

HELEN MOFFETT, *Appellee,* v. T. S. MOFFETT et al., *Defendants;*
T. S. MOFFETT and ETHEL ZOMBRO, *Appellants.*

(292 Pac. 942.)

Opinion filed November 8, 1930.

*Jay Botts,* of Coldwater, *A. E. Watson* and *Martin J. O'Donnell,* both of Kansas City, Mo., for appellant T. S. Moffett; *Glen A. Wisdom,* of Kansas City, Mo., for appellant Ethel Zombro.

*John W. Davis, Russell L. Hazzard,* both of Dodge City, and *Orlin A. Weede,* of Kansas City, Mo., for appellee Helen Moffett; *Henry M. Beardsley* and *George D. Beardsley,* both of Kansas City, Mo., for appellees T. S. Moffett, R. J. Moffett and Joseph W. Moffett.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff, claiming to be the owner of and in possession of the undivided one-half of certain real property in Kansas, brought this action to quiet her title thereto and to procure the correction of a deed purporting to convey the real property to John Moffett and T. S. Moffett. T. S. Moffett filed an answer in

which he claimed to own an undivided one-half of the real property adverse to the plaintiff and asked that he be decreed to be the owner of the undivided one-half thereof. Ethel Zombro and Thomas D. Zombro filed an answer in which Ethel Zombro claimed an undivided one-sixth of an undivided one-half of the real property described in plaintiff's petition. The interests of the plaintiff Helen Moffett and of the defendant T. S. Moffett are antagonistic to each other. There is no antagonism between Helen Moffett and the other defendants in this action. The interest of Ethel Zombro is antagonistic to the interest of T. S. Moffett, R. J. Moffett, Joseph W. Moffett, Jennie M. Lynn and Annie McKee.

The action was tried without a jury. The court made findings of fact and conclusions of law, as follows:

"1. Prior to July, 1920, L. B. Andrews, J. C. Lewis, John Moffett and T. S. Moffett owned 10,655 acres of land in Comanche county, Kansas, each owning an undivided one-fourth interest in said land.

"2. The record title to one section of said land was in J. C. Lewis: the record title to the balance of said land was in L. B. Andrews.

"3. In July, 1920, all of said land was amicably partitioned, Lewis and wife and Andrews and wife executing and delivering quitclaim deeds for the land each party was to receive in the division.

"4. In the partition John Moffett received the land involved in this suit, to wit:

| | Sec. | Twp. | Rng. |
|---|---|---|---|
| SW¼ | 3 | 34 | 19 |
| SE¼ | 4 | 34 | 19 |
| All | 36 | 34 | 19 |
| All | 33 | 33 | 19 |
| W½ and 15 a. in SW¼ of SE¼ | 26 | 33 | 19 |
| N½ | 35 | 33 | 19 |

and in addition thereto eighty acres known as the Guss land and described as: East half of the southwest quarter of section 35, township 33, range 19.

"5. The partition deeds from Andrews and Lewis to John Moffett were received by him shortly after their execution, and as late as September, 1920, were in the filing cabinet in the Moffett Brothers office in Kansas City, Mo. After the death of John Moffett in 1927, said deeds were found in John Moffett's box in the Interstate Bank at Kansas City, Mo. The key to said box was in Moffett Brothers' office and all employees had access to said key. Mrs. Louise McGew Moffett had nothing to do with the Moffett office and knew nothing about the files in said office prior to the latter part of January, 1923.

"6. At the time of the delivery of the Lewis and Andrews deeds to John Moffett, the sole grantee in said deeds was John Moffett. When said deeds were recorded in Comanche county, Kansas, on the 18th day of February, 1921, the words, '& T. S. Moffett' had been inserted in the grantee clause of said deeds following the name of John Moffett, as grantee. Said words '& T. S.

Moffett' were typewritten with different ribbon than the body of said deeds, and the alterations were plainly visible.

"7. Neither Lewis nor Andrews inserted the words '& T. S. Moffett' in said deeds, nor did they authorize any such insertion to be made.

"8. There is no evidence that John Moffett inserted the words '& T. S. Moffett' in said deeds, or that he gave authority to anyone so to do. The evidence fails to disclose who made the alterations.

"9. Check in payment of the recording fees of the Lewis and Andrews deeds was signed by Moffett Brothers by John Moffett and the deeds, after being recorded, were returned to 'Moffett & Andrews.'

"10. After the partition of July, 1920, John Moffett and T. S. Moffett operated the lands involved in this suit and the lands received by T. S. Moffett in the division of 1920, together with other ranches owned by them as partners.

"11. In the partnership operations, T. S. Moffett devoted most of his time to the management of the western ranches, including the lands in Comanche county, and John Moffett devoted most of his time to the management of the Birmingham ranch and running the Kansas City office.

"12. On February 8, 1923, John Moffett and T. S. Moffett entered into a partnership agreement which recited: That they were operating the Comanche county, Kansas, lands received by T. S. Moffett and John Moffett in the division of July, 1920, as partners; that they had mortgaged certain parts of the Comanche ranch, part of the lands owned by John Moffett and part by T. S. Moffett, 'not in equal acreage or amounts and the proceeds are being used in the joint account'; and provided that said loans should be paid out of joint funds and that John Moffett and T. S. Moffett should each be liable for an equal one-half of the amount due on said mortgages regardless of the ownership of the lands mortgaged. Said contract also recited that permanent improvements had been erected on the lands of John Moffett and T. S. Moffett without regard to the ownership of said lands, and provided for the division of said improvements at the termination of the partnership.

"13. Subsequent to the division of 1920 John Moffett and T. S. Moffett borrowed money from the Warren Mortgage Company to be used in conducting their partnership business, and secured said loans by executing mortgages on the Comanche county lands and other lands. These loans were paid out of partnership funds. In November, 1922, John Moffett and T. S. Moffett, and their wives, executed two mortgages to the Warren Mortgage Company covering a portion of the lands received by John Moffett in the division of 1920, and then standing in the name of John Moffett and T. S. Moffett by virtue of the deeds recorded February 18, 1921, as mentioned in finding No. 6. These mortgages were also paid out of partnership funds.

"14. There was no oral agreement between John Moffett and T. S. Moffett that John Moffett would give T. S. Moffett one-half of his Comanche county land.

"15. T. S. Moffett has not changed his position or been injured by reason of any representations or acts of John Moffett or the plaintiff.

"16. In February, 1921, John Moffett sold to Mrs. Oliver Guss eighty acres

of the land which he had received in the friendly partition. On March 18, 1921, T. S. Moffett and wife executed to John Moffett a quitclaim deed covering said eighty acres, which deed recited that it was given without consideration for the purpose of correcting title.

"17. T. S. Moffett stated to Mrs. Guss when she was in the office at Kansas City in September, 1920, that this eighty acres of land belonged to John Moffett.

"18. Following the friendly partition of July, 1920, T. S. Moffett secured insurance on the improvements on some of the land involved in this suit, in the name of John Moffett. On June 1, 1927, one of these policies was renewed in the name of John Moffett and T. S. Moffett.

"19. John Moffett and plaintiff herein were married on February 22, 1921, and the marriage relation continued to the date of John Moffett's death, to wit: August 23, 1927.

"20. The will of John Moffett was duly probated in Comanche county, Kansas, and his widow, plaintiff herein, filed her election to take under the law and not under said will.

"21. The residence of John Moffett for the ten years immediately preceding his death, August 23, 1927, was Kansas City, Mo., and the residence of T. S. Moffett for the ten years last past has been Kansas City, Mo.

"22. That this action was commenced on the 14th day of July, 1928.

"23. That the defendants, T. S. Moffett, Jennie M. Lynn, Annie McKee, R. J. Moffett and Joseph W. Moffett, are devisees under the residuary clause of the will of John Moffett, deceased; that Ethel Zombro is the daughter of one Agnes Mott, deceased, who was a sister of John Moffett; that said Agnes Mott, the mother of Ethel Zombro, died about thirty-five years before the will of John Moffett was executed; that neither Ethel Zombro nor her mother, Agnes Mott, are especially named as devisees in the residuary clause of said will. A special bequest or legacy of five thousand dollars is made to Ethel Zombro in another portion of said will.

"24. That all other issues of fact are found in favor of the plaintiff.

"CONCLUSIONS OF LAW.

"1. That the plaintiff's title to an undivided one-half interest in the lands involved in this suit be quieted in her.

"2. That the quitclaim deeds from L. B. Andrews and wife and J. C. Lewis and wife to John Moffett be reformed by striking from the grantee clause therein the words '& T. S. Moffett.'

"3. That the defendant Ethel Zombro is not entitled to take under the residuary clause of the will of John Moffett, deceased.

"4. That the plaintiff, Helen Moffett, is the owner of an undivided one-half interest in the lands involved in this suit; that Jennie M. Lynn, Annie McKee, R. J. Moffett, Joseph W. Moffett, and T. S. Moffett are each the owner of an undivided 14/144 interest in the land in suit; that Ethel Zombro is the owner of an undivided 2/144 interest in the lands involved in this suit."

Judgment was rendered in accordance with the fourth conclusion

of law. From that judgment T. S. Moffett appeals. Ethel Zombro also appeals.

1. The appellant T. S. Moffett argues that the plaintiff's petition did not state a cause of action. It alleged that she was the owner of an undivided one-half of the real property in controversy and that she was in possession thereof, and asked that her title thereto be quieted. She alleged that T. S. Moffett claimed an interest in the property and asked that a deed be reformed. The defendant T. S. Moffett answered, claiming an undivided one-half interest in the property adverse to the plaintiff, and asked that he be decreed to be the owner of that undivided one-half interest therein under and by virtue of the deed which the plaintiff asked to be reformed. The plaintiff, in her reply to the answer of T. S. Moffett, denied its allegations and alleged facts which showed why the deed should be reformed and why her title to the land should be quieted. The plaintiff did not allege any fact which defeated her right to have her title quieted.

The plaintiff's petition stated a cause of action. T. S. Moffett's answer presented a claim to the property adverse to the claim of the plaintiff. Those claims were properly adjudicated even if the petition had been defective. The objection to the sufficiency of the petition was first presented to the court by objecting to the introduction of evidence; no demurrer to the petition was filed. Under these circumstances, it was proper for the court to determine the matters at issue between the plaintiff and T. S. Moffett. It was not error to overrule T. S. Moffett's objection to the introduction of evidence by the plaintiff.

2. T. S. Moffett contends that the cause of action of the plaintiff was barred by the statute of limitations and by her laches at the time it was commenced. The deed under which T. S. Moffett claims was dated July 8, 1920. It was recorded February 18, 1921. John Moffett died August 23, 1927. This action was commenced July 14, 1928. Attention is called to the twenty-first finding of fact which recites that for ten years prior to the trial, which commenced February 12, 1929, T. S. Moffett had been a resident of Kansas City, Mo. The evidence did not show how much of the time after the execution of the deed T. S. Moffett had been in the state of Kansas. The plaintiff married John Moffett February 22, 1921. Neither the pleadings nor the evidence shows that the action of the plaintiff was barred by the statute of limitations, nor that she had

been guilty of such laches as precludes her right to have her title to the property quieted and the deed reformed.

3. T. S. Moffett contends that "the evidence was not sufficient to entitle the plaintiff to the relief prayed"; that "the partition deeds recorded by John Moffett and the attendant circumstances invested appellant with a title good against appellee Helen Moffett and all the world"; and that "the trial court erred in the findings of fact and conclusions of law because the findings of fact were directly contrary to the consequences which the law applies to the uncontroverted facts in evidence. And the conclusions of law were erroneous for a like reason." These contentions are supported by argument which, when analyzed, reduce themselves to the proposition that the findings of fact and conclusions of law made by the court were not supported by evidence. The contention that findings of fact made by trial courts and answers to questions submitted to juries are not sustained by evidence is often made, but rarely sustained. This often compels the court to go through the abstracts to find the evidence sustaining the findings of the court or the answers to questions. That, in the present case, has been done by counsel for plaintiff in a supplemental counter abstract, where each finding of the court is set out, and following it is an abstract of the evidence sufficient to support that finding. In the present instance the court will not detail that evidence, but refers the parties to this controversy to the evidence abstracted by the plaintiff.

4. The appellant Ethel Zombro claims an undivided one-sixth of an undivided one-half of the property in controversy. This claim is based on the fourth subdivision of the will of John Moffett. The material parts of his will read as follows:

"Third: I give and bequeath unto each of my nieces and nephews, the sum of five thousand dollars ($5,000), and in case of the death of any one or more of said nieces and nephews prior to my demise, then the five thousand dollars ($5,000) to which they would be entitled, if living, shall be paid over and delivered to their lineal descendants, *per stirpes*, according to the laws of the state of Missouri, and in case of the death of any of my nieces and nephews without being survived by lineal descendants, the bequest to such nieces and nephews shall become null and void.

"Fourth: All of the rest, residue, and remainder of my estate whatsoever, real, personal, and mixed, wherever situated and in whomsoever's possession may be found, I give, devise and bequeath unto my brothers and sisters in equal parts, and in case of the death of any one or more of my said brothers and sisters, prior to my demise, then the portion to which said brothers and sisters would be entitled, if living, shall be divided and distributed among

lineal descendants of said brothers and sisters, *per stirpes*, according to the laws of the state of Missouri; and in case of the death of any of the said brothers and sisters prior to my demise without being survived by lineal descendants, then the bequest made to such brothers and sisters shall become null and void."

John Moffett left no children. He left surviving him his wife, the plaintiff. At the time of making his will on February 21, 1921, he resided in Kansas City, Mo., and he then had living the following brothers and sisters: Elizabeth Andrews, and the defendants Jennie M. Lynn, Annie McKee, R. J. Moffett, Joseph W. Moffett and T. S. Moffett. Elizabeth Andrews died May 9, 1921, about three months after John Moffett signed his will. She did not have any children. Under the fourth subdivision of the will the devise to Elizabeth Andrews became null and void. The trial court, in effect, determined that no disposition was made by the will of that part of the testator's estate which would have gone to Elizabeth Andrews had she survived her brother, and that therefore intestacy resulted as to that part of his estate. No complaint is made by any party to this action of that part of the judgment. Ethel Zombro complains because she was not given the interest that would have gone to her mother had she lived until after the will was made.

Ethel Zombro is a daughter of Agnes Mott, a sister of John Moffett. Agnes Mott died January 22, 1892, leaving Ethel Zombro as her only child. The question presented by Ethel Zombro is: Does she take under the fourth subdivision of the will, she being the only child of Agnes Mott, who died years before the will was signed?

Section 516 of the Revised Statutes of Missouri, 1919, was pleaded by Ethel Zombro and was introduced in evidence. It reads:

"When any estate shall be devised to any child, grandchild, or other relative of the testator, and such devisee shall die before the testator, leaving lineal descendants, such descendants shall take the estate, real or personal, as such devisee would have done in case he had survived the testator."

Ethel Zombro also pleaded and introduced in evidence the following decisions of the supreme court of Missouri construing that statute: *Guitar et al. v. Gordon et al.*, 17 Mo. 408; *Jamison, Ex'r of Bell, v. Hay et al.*, 46 Mo. 546; *Lounden v. Bollam*, 302 Mo. 490; and *Murphy et al. v. Enright et al.*, 264 S. W. 811. The effect of these decisions is that under the Missouri statute, where an estate is devised to children and relatives, if part of them are dead and part living, the children of those dead shall take the place of their

deceased parents, although the parents were dead at the time the will was made.

On page 1614 of volume 3 of the seventh edition of Jarman on Wills the following language is found:

"The general rule is well established that when a testator makes a simple gift to 'my brothers' or 'the nephews of A.' or the like, he primarily means those who are living at the date of the will, and does not refer to those who are then dead."

This rule is supported by *Estate of Matthews,* 176 Cal. 576; *Doe d. Hearn v. Cannon,* 9 Del. 20; *Stennett v. Hall,* 74 Iowa, 279; *Billingsley v. Tongue,* 9 Md. 575; *Lindsay v. Pleasants,* 39 N. C. 320; *Scales v. Scales,* 59 N. C. 163; *Twitty v. Martin,* 90 N. C. 643; *Sloan v. Hanse,* 2 Rawle (Pa.) 28; *Barnett's Appeal,* 104 Pa. St. 342. This rule finds some support in *Mallows v. Mallows,* 93 Kan. 551, 144 Pac. 829, and in *Gardner v. Anderson, Trustee,* 114 Kan. 778, 784, 227 Pac. 743. See, also, 1 Page on Wills, 2d ed., § 216.

The rule announced by Jarman and the one declared by the supreme court of Missouri are in conflict with each other. The decisions of the supreme courts of this country are also in conflict. As an illustration of that conflict, attention is directed to *Pimel v. Betjemann,* 183 N. Y. 194. There, the highest court of New York, then consisting of seven judges, divided, four following the rule announced by Jarman and three following the rule adhered to by the supreme court of Missouri.

The third subdivision of the will of John Moffett makes provision for his nephews and nieces. They are not otherwise mentioned in the will. If John Moffett had intended to put Ethel Zombro on an equality with his brothers and sisters, he could have easily so stated. He did not do that. He devised the residue of his property to his brothers and sisters. Which brothers and sisters? His living ones, or his living and dead ones? The language John Moffett used was: "I give to my brothers and sisters in equal parts." That expression must refer to his then living brothers and sisters. Agnes Mott did not then live. There was no such person. She was not then a sister. She had been, but she had ceased to be such. That language is followed by these words:

"In case of the death of any one or more of my said brothers and sisters, prior to my demise, then the portion to which said brothers and sisters would be entitled, if living, shall be divided and distributed among the lineal descendants of said brothers and sisters, *per stirpes,* according to the laws of the state of Missouri."

What brothers and sisters are referred to by that language? The same ones that are referred to in the preceding words—the brothers and sisters living at the time the will was made. At the time the will was made Agnes Mott was not in existence. She had ceased to be. She could not take under the will. John Moffett could have specifically named all of his brothers and sisters. If he had done so, he would not have named Agnes Mott. Under these circumstances, if he had desired that the share which would have gone to Agnes Mott had she been living should go to Ethel Zombro, he would have said so.

The title to real property in Kansas is governed by the law of this state. A dead person cannot take title to real property. A devise of real property to a dead person cannot take effect in Kansas. In *Kennett v. Kidd,* 87 Kan. 652, 125 Pac. 36, Id., 89 Kan. 4, 130 Pac. 691, it was declared that the Modern Woodmen of America, a fraternal insurance organization, cannot take and hold property given to it by will because its legal source of income is dues, premiums and assessments, and that, when a testator has attempted to devise property to such an organization, his heirs may show the invalidity of such provision and the inability of the organization to take thereunder. That rule must now be followed, because it is a rule of real property in this state. Applying that rule to the facts in the present action, it must be held that nothing was devised by the fourth subdivision of the will to Agnes Mott nor to Ethel Zombro.

The entire judgment is affirmed.

MARSHALL, DAWSON and HARVEY, JJ., dissent from the fourth paragraph of the syllabus and the corresponding portion of the opinion.