Louise McGrew MOFFETT, as an Individual and Executrix of the Estate of Thomas S. Moffett, Deceased, Appellant,

v.

COMMERCE TRUST COMPANY, a Corporation, Respondent.

No. 44091.

Supreme Court of Missouri.

Division No. 1.

July 11, 1955.

Motion for Rehearing and to Transfer to Court en Banc and for Stay Order Denied Oct. 11, 1955.

Motion for Rehearing and to Transfer to Court en Banc Denied Nov. 14, 1955.

594

Martin J. O'Donnell, Kansas City, for appellant.

Hugh M. Hiller, Philip J. Close, Kansas City, for respondent.

HYDE, Judge.

Action for damages in the amount of two and one-half million dollars. Motion to dismiss plaintiff's amended petition was sustained for failure to state a cause of action and for other legal grounds stated therein. (These included res judicata and limitations.) The dismissal was with prejudice and plaintiff has appealed. (Plaintiff is a party both individually and as executrix but we will refer to plaintiff in the singular only.)

Plaintiff claims defendant was a party to a conspiracy to fraudulently make use of legal proceedings to injure plaintiff and her testator by commencing groundless actions in connection with the settlement of the estate of John Moffett and partnership estates in which John Moffett and her husband Thomas Moffett were partners. Reports of previous litigation concerning these estates which has been finally determined include Moffett v. Moffett, 131 Kan. 546, 292 P. 942; Moffett v. Moffett, 131 Kan. 582, 292 P. 947, 77 A.L.R. 294; Moffett v. Moffett, 283 U.S. 826, 51 S.Ct. 351, 75 L. Ed. 1440; Clark v. Moffett, 136 Kan. 711, 18 P.2d 555; Clark v. Moffett, 290 U.S. 642, 54 S.Ct. 61, 78 L.Ed. 558; Moffett v. Robbins, D.C., 14 F.Supp. 602; Moffett v. Robbins, 10 Cir., 81 F.2d 431; Moffett v. Robbins, 298 U.S. 675, 56 S.Ct. 940, 80 L. Ed. 1397; Moffett Bros. Partnership Estate v. Moffett, 345 Mo. 741, 137 S.W.2d 507; Moffett v. Commerce Trust Co., 354 Mo. 1098, 193 S.W.2d 588; Moffett v. Commerce Trust Co., 329 U.S. 669, 67 S.Ct. 82, 91 L.Ed. 590; 329 U.S. 827, 67 S.Ct. 184, 91 L.Ed. 702; Moffett v. Commerce Trust Co., D.C., 75 F.Supp. 303; Moffett v. Commerce Trust Co., D.C., 87 F.Supp. 438; Moffett v. Commerce Trust Co., 8 Cir., 187 F.2d 242; Moffett v. Commerce Trust Co., 342 U.S. 818, 72 S.Ct. 32, 96 L.Ed. 618; 342 U.S. 879, 72 S.Ct. 163, 96 L.Ed. 661; Id., 343 U.S. 989, 72 S.Ct. 1070, 96 L.Ed. 1375. Defendant's reliance on res

judicata and limitations is based on these cases.

■ Plaintiff's petition is in two counts, both asking judgment for the same damages. Count Two adopts every allegation of Count One and of Exhibit 1 made a part of the petition. Exhibit 1 contains the petition in the suit in the United States District Court in Kansas City, 75 F.Supp. 303, 87 F.Supp. 438, 187 F.2d 242, and other exhibits presented to the Federal Court. We will consider all facts set out in the petition and attached exhibits. Sec. 509.130; statutory references are to RSMo and V.A.M.S. The petition contains many charges and statements in the form of conclusions and also cites and quotes from some of the decisions hereinabove set out. The petition covers 86 pages in the typewritten transcript with 72 printed pages of exhibits. The following facts about the course of the litigation appear therefrom. John Moffett made his will February 21, 1921, one day before he was married. (His widow is now Helen Weede, having remarried.) The will devised all of his property to his relatives, except a bequest of $5,000 to Miss Helen Mustard, who became his wife; and appointed his brother Thomas Moffett executor, naming defendant alternate executor. For a copy of the will of John Moffett see Zombro v. Moffett, 329 Mo. 137, 44 S.W.2d 149, loc. cit. 150. It is alleged that defendant (by its trust officer B. C. Howard) prepared the will in consideration of being appointed alternate executor. John Moffett died August 23, 1927 and Thomas Moffett was given letters as executor by the Probate Court of Jackson County. It is alleged that defendant advised the widow that she could defeat the will by electing to reject it and take one-half of the estate. (The Supreme Court of Kansas upheld this view of the cases above cited.) In November 1928, Thomas Moffett was removed as executor on the ground of conflicting interests because of his claimed indebtedness to the partnership estates of Moffett Brothers and Moffett Brothers and Andrews, in which both John Moffett and Thomas Moffett had been partners, and also indebtedness of Thomas Moffett and the partnership estates to the John Moffett estate. Thereafter, defendant was appointed to administer the John Moffett estate and both partnership estates; and the litigation over the rights of the parties continued for many years in Kansas, Missouri and the Federal Courts. Thomas Moffett died December 22, 1930 and plaintiff was given letters as executrix of his estate. She alleges that she is the sole beneficiary under his will.

The theory of the first count of the petition is that defendant conspired with the widow of John Moffett and others (attorneys, accountants, etc.) to institute and maintain groundless actions in which it had no individual interest to injure plaintiff and her husband and to obtain his property; and that defendant was also guilty of abuse of process. It is because these actions were successfully terminated, in favor of the estates of which defendant was executor or administrator, that plaintiff claims to have been damaged. The petition and exhibits set out at considerable length the course of the litigation and incidents connected with it, including the judgment rendered in the District Court of Harper County, Kansas, affirmed 18 P.2d 555, in which the principal determinations of the rights of the parties was made and which is especially attacked and claimed to be the result of fraud. This Harper County case, commenced by Thomas Moffett (who died before the trial) as a partition suit, involved the parties' interests in land and an accounting between them and their partnerships. It resulted in judgments in favor of the John Moffett estate for $143,829.96 against the Moffett Brothers estate, for $27,399.25 against the Thomas Moffett estate, and for $101,288.06 against the Moffett Brothers Cattle, Land and Lumber Company. Fourteen suits against the Thomas Moffett estate, alleged to be fictitious and groundless, are listed including one still pending in the Circuit Court of Jackson County. These proceedings include claims filed in the Probate Court of Jackson County and in the Probate Courts of Chautauqua and Wyandotte Counties in Kansas. As to Count Two, plaintiff's brief says it "contains allegations as to action in the federal courts based on the Federal Civ-

il Rights Acts, same being Sections 41, 42, 43, 47 and 48, Title 8, U.S.C.A. [now 42 U.S.C.A. §§ 1981–1983, 1985, 1986]" and "contains extracts from the opinions in the United States District Court for the Western District of Missouri, and of the United States Court of Appeals for the Eighth Circuit, establishing that said courts—while accepting the truth confessed by respondent's motion to dismiss alleged in the second amended complaint (Exhibit 1) in the federal court—yet decided that the action was against persons who were found by said federal courts not to be exercising state power, and that said federal courts were without jurisdiction to grant appellant any relief. * * * In substance, Count II alleged that respondent was estopped by its admissions of the truth of the allegations of the second amended complaint in said federal court proceedings, and that said federal court proceedings did not estop appellant from instituting this action."

█ We must hold that the trial court was correct in holding this petition did not state a cause of action. In the first place, we held in the former case of Moffett v. Commerce Trust Co., supra, 193 S.W.2d loc. cit. 591, the petition failed to state a joint cause of action and that is what plaintiff attempts to do now. Plaintiff says the judgment in that case, under our old code of procedure for treble costs on finding a third petition insufficient (repealed Sec. 948, R.S. 1939), was not a decision on the merits which could be res judicata and was not a bar to any future proceedings involving the same facts, citing Gordon v. Burris, 125 Mo. 39, 28 S.W. 191; State ex rel. Damon v. McQuillin, 246 Mo. 674, 152 S.W. 341; Gibson v. Armour & Co., Mo.App., 219 S.W. 152. Be that as it may, and these cases seem to so hold, we reaffirm our previous ruling and hold that this petition fails to state a joint cause of action for the reasons stated in our former opinion.

█ However, we will now go further, as we did not do in our previous decision, and hold that no cause of action is stated in favor of plaintiff, either individually or as executrix, in either count. As to Count Two, we hold no cause of action is stated for the reasons given by the United States Court of Appeals in Moffett v. Commerce Trust Co., 8 Cir., 187 F.2d 242. Plaintiff's brief says, as to Count One: "Said petition stated a cause of action in that: A. Said petition charged a conspiracy to institute and maintain groundless actions in violation of the common law and sections 556.-120 and 556.130. B. Said petition charged respondent, individually, with unlawful maintenance of said actions, in which it had no individual interest. C. Said petition charged respondent with abuse of process." Section 556.120 makes conspiracy to do certain things a crime (including "falsely or maliciously to move or maintain any suit") and Section 556.130 requires an overt act except in certain instances. Plaintiff also relies on Section 537.010, providing for survival of actions for wrongs done to the property rights or interests, and Section 537.050, preserving right of action to persons injured by commission of crime. As to nature of tort action of conspiracy see Kansas City v. Rathford, 353 Mo. 1130, 186 S.W.2d 570. Maintenance, in the modern view, "is an officious intermeddling in a suit which in no way belongs to one, by maintaining or assisting either party, with money or otherwise, to prosecute or defend it." 10 Am.Jur. 549, Sec. 1; see also 14 C.J.S., Champerty and Maintenance, § 1, page 357; 4 Stephen's Commentaries 263; Warren's History of the American Bar, p. 24; State v. Bacon, 27 R.I. 252, 61 A. 653. "The purpose of the law of champerty and maintenance was to prevent officious intermeddling in the affairs of others for purposes of speculation or other unworthy motives, and to prevent the strong and influential men of early English times from oppressing the weak." Curry v. Dahlberg, 341 Mo. 897, 110 S.W.2d 742, loc. cit. 748, 112 S.W.2d 345. Certainly as a lawfully authorized executor (and administrator of the partnership estates) defendant had not only the right but the duty to collect debts due it and to prosecute suits in favor of the estate for that purpose. Sec. 462.140; 21 Am.Jur. 495–497, Secs. 221–224; 33 C.J.S.,

Executors and Administrators, §§ 167–169, pages 1136–1142; 2 Woerner, American Law of Administration 1013, Sec. 321. With such authority and duty, it could not be guilty of maintenance or unlawful conspiracy to maintain these actions.

■■ Plaintiff, however, contends that defendant did not have this authority or duty because its appointment as executor was void. Plaintiff claims this because it was alleged that defendant's appointment was made when a special probate judge was presiding in the Probate Court of Jackson County; that defendant's participation in preparing the will, in which it was named alternate executor, amounted to unlawful practice of law and trading for appointment as executor; and that defendant was representing conflicting interests in being executor of the John Moffett estate and administrator of the partnership estates. Plaintiff says defendant's unlawful practice of law and its other illegal acts prevented the vesting in it of title to any asset or cause of action of the estate. It is our view that the facts stated concerning these contentions do not show that its appointment was void or show that defendant was a mere intermeddler in the litigation so as to be guilty of maintenance. In the first place, defendant was a party to all of these suits and not a bystander aiding other parties in their own suits. As to appointment by a special judge, the statute then in force (now Sec. 481.140) authorized a special judge and no facts are stated in the petition to show that the special judge was not properly selected and qualified to act at that time. There was specific authorization for such a statute in our 1875 Constitution, Art. VI, Sec. 29. We note that this matter was previously raised and decided against plaintiff. See Clark v. Moffett, supra, 18 P.2d loc. cit. 558. The other matters raised (including the claim that defendant was illegally practicing law in preparing the will) perhaps could have been grounds for refusing to appoint defendant or for revocation of its letters (see Sec. 461.500) but they were certainly not an absolute disqualification. Plaintiff cites Nute v. Fry, 344 Mo. 163, 125 S.W.2d 841, 121 A.L.R. 673, in support of the claim that defendant's appointment was void, because of the allegation that it traded for its appointment, but that was a case of attempting to enforce against an estate of a guardian the payment of the consideration of an illegal contract for appointment as guardian and the validity of the acts of the guardian therein was not involved. What plaintiff is really trying to do is to collaterally attack the validity of the orders of the Probate Court granting defendant letters as executor and administrator. Since the facts stated do not show this action to be absolutely void any such collateral attack must fail.

■ It is likewise true of the claim as to representing conflicting interests that while this might have been a ground for refusal of appointment or revocation of letters, it was not an absolute disqualification. It is not alleged that plaintiff sought the remedy of removal in the Probate Court of Jackson County or that there was an appeal from any action taken by that court. It seems to be generally held that an interest adverse to the estate is not an absolute disqualification to being executor or administrator but may be ground for refusal to appoint, or for removal, depending on the circumstances of the particular case. 21 Am.Jur. 461–463; Secs. 156–157; 33 C.J.S., Executors and Administrators, § 28, page 913; annotation 18 A.L.R.2d 633; 2 Limbaugh's Missouri Practice 451, Sec. 957; 2 Woerner 888, Sec. 273; State ex rel. Evans v. Stahlhuth, Mo. App., 183 S.W.2d 384; Groves v. Aegerter, 226 Mo.App. 128, 42 S.W.2d 974; Davis v. Roberts, 206 Mo.App. 125, 226 S.W. 662; State ex rel. Flick v. Reddish, 148 Mo.App. 715, 129 S.W. 53. Plaintiff cites State to Use of Miller's Adm'r v. Bidlingmaier, 26 Mo. 483, in which we said the probate court should not have permitted the same individual to represent interests hostile to each other by being administrator of two estates, one of which had a large claim against the other. The estates were those of a husband and wife. The husband died while he was administrator of his wife's estate and one Kehr was then appointed ad-

ministrator of both estates. Kehr made final settlement of the husband's estate showing a large amount due the wife's estate (which the court adjudged to be due) and then, as administrator of the wife's estate, Kehr brought suit against the sureties on the husband's bond as administrator to collect this judgment in favor of the wife's estate. The sureties were not notified of the final settlement and had no opportunity to defend. This Court said: "There is no other mode of treating such irregularities than by regarding the proceedings in which they occur as nullities." Apparently the judgment was based only on the administrator's action in charging this amount against the husband's estate in his final settlement; and it was this judgment and not the administrator's appointment that was held void.

■ The situation in this case is very different. There was no lack of opportunity to defend in this case. The petition shows the judgments resulted from a trial in the District Court of Harper County, Kansas. This is identified through the exhibits as the Kansas case hereinabove cited. There was a complete and thorough accounting between the estates involved with books and records before the court. The contention was made therein that defendant was intervening in two capacities which were in conflict and the court on the first appeal said: "But we think there is no such conflict as would make it difficult for the trial court to ascertain and adjudicate the respective rights of the parties." Moffett v. Moffett, supra, 292 P., loc. cit. 950. It also appears that a sister of plaintiff was ancillary administrator in Kansas for the estate of Thomas Moffett and the Moffett Brothers partnership estate, and appeared as representative of the Thomas Moffett estate in the Kansas litigation in which the accounting was had. See Moffett Bros. Partnership Estate v. Moffett, supra, 137 S.W.2d, loc. cit. 509. Furthermore, our statute, Sec. 461.650, gives a surviving partner the right to administer the partnership estate as did the common law, 2 Limbaugh 492, Sec. 980, although he would necessarily have claims against it as part owner of its assets and

otherwise. Section 461.700 provides that, if the surviving partner does not within the time therein specified give the required bond, see Sec. 461.680, then the administrator of the deceased partner shall give bond and he becomes administrator of the estate. See Secs. 461.660 and 461.720; 2 Limbaugh 493, Sec. 981. Thus our statutes specifically authorized the administration by defendant of the estate of John Moffett and his partnership estates. Whether this is a wise provision is for the Legislature and not for the courts. As to basis for such policy see 1 Woerner 450–458, Secs. 129–130; 40 Am. Jur. 332–334, Secs. 293–295; 68 C.J.S., Partnership, §§ 287–288, pages 792–794. Certainly partnership administration is essentially different from other administration.

■ Plaintiff also cites and relies on the case of Moffett Bros. Partnership Estate v. Moffett, supra, 137 S.W.2d 507, to establish her claims as to conflicting interests. In that case we held an attorney could not be allowed a fee for services in the Kansas accounting case from both the John Moffett estate and the Moffett Brothers partnership estate; but we did approve the allowance of a fee for other services by this attorney to the partnership estate. The situation as it concerns plaintiff's allegations and contentions as to conflicting interests and conspiracy in instituting and maintaining groundless suits is well stated in Moffett v. Robbins, supra, 81 F.2d, loc. cit. 435, in ruling on similar contentions made by plaintiff in a suit to enjoin the enforcement of the Kansas judgment, holding that it was necessary to state facts showing extrinsic rather than intrinsic fraud to obtain the relief sought. The Court said: "In order to come within the rule, it must appear by clear allegations of fact that the party asserting it had a valid defense to the cause of action on which the judgment was rendered; that he was prevented by extrinsic fraud, accident, mistake, concealment, or other chicanery from presenting such defense, and that he had not been negligent in availing himself of it. * * * Manifestly, therefore, the allegations that Thomas S. Moffett was wrongfully removed as

executor of the estate of John Moffett; that the estate of John Moffett had no valid claim against the partnership; that the claim was fictitiously filed in Missouri with knowledge that under the law of that state it could not be maintained there; that with such knowledge Commerce Trust Company intervened in the suit for partition and accounting in an effort to have it established there; that in doing so and in failing to advance available defenses thereto, the Trust Company violated its fiduciary duty to the partnership and that the defendant likewise violated his obligation to the partnership by co-operating with the Trust Company and Helen Moffett in the action; that the books and records upon which the claim was predicated were unreliable and untrue, and that with knowledge of that fact those advocating the claim introduced them in evidence, present intrinsic fraud because all of those facts were before the state court. Those matters were involved, thoroughly litigated, and finally adjudicated there; and the charge in the present bill that they occurred in consequence of a conspiracy does not convert them into extrinsic or collateral fraud." See also Hockenberry v. Cooper County State Bank, 338 Mo. 31, 88 S.W.2d 1031 and cases cited. Plaintiff's present petition is defective and insufficient in this same respect.

As to abuse of process, plaintiff cites Dr. P. Phillips & Sons v. Kilgore, 152 Fla. 578, 12 So.2d 465; White v. McCoy Land Co., 229 Mo.App. 1019, 87 S.W.2d 672; White v. Scarritt, 341 Mo. 1004, 111 S.W.2d 18; Sovereign Camp Woodmen of the World v. O'Neill, 266 U.S. 292, 45 S.Ct. 49, 69 L.Ed. 293. It is true that abuse of process is different from malicious prosecution and the fact that an action is still pending between the parties in the Circuit Court of Jackson County is not a bar to an action for abuse of process. See A.L.I. Restatement of Torts, Sec. 682; Prosser on Torts, 892, Sec. 98; Am.Jur. 176, Sec. 3, p. 178, Sec. 6, p. 180, Sec. 9; Annotation 80 A.L.R. 580; Thompson v. Farmers' Exchange Bank, 333 Mo. 437, 62 S.W.2d 803. As stated by Prosser: "The purpose for which the process is used, once it is issued, is the only thing of importance. Consequently in an action for abuse of process it is unnecessary for the plaintiff to prove that the proceeding has terminated in his favor, or that it was obtained without probable cause or in the course of a proceeding begun without probable cause. * * * The essential elements of abuse of process, as the tort has developed, have been stated to be: first, an ulterior purpose, and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding. Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions. * * * The ulterior motive may be inferred from the wrongful use made of the process, but the use itself may not be inferred from the motive." Likewise, the Restatement of Torts comment, under Section 682, is: "The gravamen of the misconduct for which the liability stated in this Section is imposed is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish. Therefore, it is immaterial that the process was properly issued, that it was obtained in the course of proceedings which were brought with probable cause and for a proper purpose or even that the proceedings terminated in favor of the person instituting or initiating them. The subsequent misuse of the process, though properly obtained, constitutes the misconduct for which the liability is imposed under the rule stated in this Section."

White v. Scarritt, supra, 111 S.W.2d 18, is a good example of proper process being used for an ulterior purpose. There defendants had brought a taxpayers' suit to determine the validity of an election (to incur indebtedness to buy land for a courthouse) seeking to enjoin the levy of taxes for the purpose authorized. The

600

courthouse site had been selected and 90 day options taken from the property owners. Plaintiff's tenants had moved out and the options were about to expire. If that happened, a new site was to be selected and plaintiff would lose her advantageous sale and be left with vacant mortgaged property. Defendants used the threat of continuing the suit to compel plaintiff and other landowners to pay to them a fixed proportion of their sale price to get the suit dismissed before the options expired. Of course, the defendants had the right as taxpayers to bring such a suit but it acted wrongfully in using the suit for the purpose of extorting money from the property owners, which they did not owe and could not have legally been compelled to pay. The trouble with plaintiff's petition herein is that it is based on allegations of wrongful motives in commencing all of the litigation and on intrinsic fraud in carrying it on but shows a state of facts under which it was defendant's duty to have the matters in issue determined. It also shows that these issues of indebtedness to the estates were determined against plaintiff's testator in actions which were proper for that purpose. A case in which no abuse of process was shown is Docter v. Riedel, 96 Wis. 158, 71 N.W. 119, 120, 37 L.R.A. 580, 65 Am.St.Rep. 40, where, although the motive was bad, the use of process was within the rights of the defendant. The court said therein that the test was: "whether the process has been used to accomplish some unlawful end, or to compel the defendant to do some collateral thing which he could not legally be compelled to do." That is exactly what was done in White v. Scarritt, supra, namely, the landowners were compelled to pay the Land Company money which they could not have been legally compelled to pay and for a matter collateral to anything involved in the pending action. However, in this case whatever the motive, the end sought was not unlawful, or beyond the authorized purpose of the process initiated, because it was to establish indebtedness to the estates represented by defendant and obtain judgments therefor. If there was intrinsic fraud in obtaining the judgments that was not abuse

of process. Neither was plaintiff's testator or his estate compelled to do some collateral thing outside of and apart from judgments that could legally be obtained in these proceedings. Therefore, our conclusion is that the petition does not state a case of abuse of process. Because of our ruling that the petition does not state a cause of action, for either abuse of process or conspiracy for unlawful maintenance, it is unnecessary to pass on the grounds of res judicata and limitations.

■■■■■■ Plaintiff makes some other contentions, all of which are without merit, but we will briefly comment on three of them. Plaintiff complains that no notice was given of the time for hearing on the motion to dismiss which plaintiff says violated constitutional due process and equal protection clauses and made the order of dismissal void. What happened was that, after plaintiff's amended petition had been filed and defendant's motion to dismiss had been filed against it, plaintiff, on October 20, 1952, was given leave to amend by interlineation; then defendant refiled its previously filed motion to dismiss. On December 12, 1952, plaintiff filed motion to dismiss defendant's motion and on June 10, 1953, plaintiff filed a motion for judgment. All motions were orally argued by attorneys for both parties on August 6, 1953, both having previously submitted lengthy written suggestions. Certainly there was no lack of opportunity to be heard and any failure to give a notice of time for hearing on defendant's refiled motion to dismiss plaintiff's petition was waived by joining in presenting, arguing and submitting all motions to the court. Plaintiff further claims that she is entitled to judgment on the theory that the admissions made by defendant by filing its motion to dismiss the Federal Court civil rights petition are conclusive against it in this case. In other words, plaintiff claims that admissions in one case by filing a motion to dismiss, for the purpose of obtaining a determination of whether a cause of action was stated, are to be considered as admitting all the facts alleged in the dismissed petition, for the purpose of deciding that a party is

entitled to judgment on the merits, in another separate and different case. It is sufficient to say that this is not and never has been the law in this state. See Leone v. Bilyeu, Mo.App., 231 S.W.2d 265; 41 Am.Jur. 459, Sec. 239; 71 C.J.S., Pleading, § 261, page 533. Plaintiff also says the will of John Moffett, made when he was a bachelor, was not revoked by his marriage and death without children being born, citing Shorten v. Judd, 60 Kan. 73, 55 P. 286; and Vanek v. Vanek, 104 Kan. 624, 180 P. 240. Therefore, plaintiff says John Moffet's widow misappropriated the interest of Thomas Moffet in the Kansas land; and that defendant is responsible for this, because it advised her she could elect to reject the will. However, the Supreme Court of Kansas decided the question of the interests of the parties in the cases hereinabove cited and that is now conclusive on that question. If that decision was incorrect, the facts stated do not show that it was the result of extrinsic fraud. Furthermore, plaintiff is wrong about the meaning of the Vanek case (which did not involve real estate) because the court said therein: "the reason why the mere marriage of the testator did not at common law revoke the will was because the widow's dower gave her sufficient protection against the effect of any will of her husband whenever made, and that the force of this consideration is not impaired by the abolishment of dower where a right of substantially equal value is substituted for it." See 17 Am.Jur. 746, Sec. 92; 57 Am.Jur. 364, Sec. 526; Secs. 22–108, 22–117, 22–127, R.S.Kan.1923. Thus the Vanek case does not hold that, under the law of Kansas, a widow has no interest in the real estate of her deceased husband under these circumstances or that her rights depend on any theory of revocation.

The judgment is affirmed.

All concur.

## On Motions for Rehearing, to Transfer to Court en Banc and for Stay Order.

Plaintiff reargues most of the original contentions made in her brief and also claims that material allegations of fact have been overlooked. Plaintiff misconstrues the opinion as stating that all actions ever commenced between the parties were successfully terminated in favor of the estates represented by defendant. We, of course, referred to the cases finally determined between the parties which we had cited in the opinion, supra. After making that statement we referred, infra, to the fourteen other suits listed by plaintiff and noted that one of them was still pending in the Circuit Court of Jackson County. It is shown that four of these cases are Probate Court claims in Kansas, one of which was alleged to be the identical claim still being litigated in the Circuit Court of Jackson County.

Plaintiff also says it is alleged in paragraphs 67 to 72 of Count One that the claims made in all of the actions listed as pending were settled before they were ever instituted; that defendant knew of this settlement; and that the actions were not brought in good faith but for the ulterior purpose of obtaining judgments for non-existing debts. It is true that this part of the petition alleged that the members of the various partnerships for several years prior to January 1, 1927, engaged in negotiations to settle disputes between them as to the correctness of their accounts and that as of that date agreed upon a settlement. However, it is stated that payments were to be made by L. B. Andrews and J. C. Lewis to John Moffett and Thomas Moffett, and it is also stated that before these payments were completed John Moffett died. Furthermore, as stated in the present motion, "Moffett Brothers partnership estate is not included in the settlement and compromise described in paragraphs 67 to 72 of Count One." The motion says this was "because the brothers John and Tom Moffett were the only members of said partnership and they never had any controversies over their business relations." Nevertheless, the petition shows that in the Harper County, Kansas case, Thomas Moffett and two of the partnership estates in which he was interested were found to be indebted to John Moffett. It is again vigorously argued that this judgment was void,

but we hold that the facts stated in the petition do not show it to be void for the reasons stated in our opinion and in the other cases cited in which it was attacked.

 As to the actions still pending, plaintiff's argument of lack of good faith in attempting to get judgments indicates a situation more in the nature of malicious prosecution than abuse of process. Malicious prosecution, of course, cannot be maintained because these actions have not been determined in plaintiff's favor. This contention of plaintiff really is wrongful initiation of civil proceedings, which we pointed out in the opinion is not abuse of process as stated in Restatement of Torts, comment under Section 682, from which we quoted. The institution of vexatious civil suits known to be groundless is governed by substantially the same rules as malicious prosecution of criminal proceedings. Prosser on Torts, 885, Sec. 97; see also Weber v. Strobel, Mo.Sup., 225 S.W. 925, 927–928 and cases cited; and see distinction made between malicious use and malicious abuse of process, 50 C.J. 612, Sec. 372, p. 622, Sec. 396; 72 C.J.S., Process, §§ 119, 120c, pp. 1188, 1195. The case of Goler v. Zaporanik (Sask.), 1 Dom.L.R. 34, was not an action for abuse of process but was, instead, a proceeding to quash a writ wrongfully issued to collect a mortgage which had been paid. It is not in point on the decisive issue herein. The allegations relied on in plaintiff's motions are not sufficient to state a cause of action of malicious prosecution and we have explained in the opinion why they do not show a cause of action for abuse of process, which is plaintiff's theory of the case.

 Plaintiff says in any event, a Federal question is presented which necessitates transfer to banc. However, we do not find any real Federal questions in the case. Plaintiff bases this claim on the contention that defendant's motion to dismiss the civil rights suit in the United States District Court, and that court's action thereon, admitted and adjudged the facts "to constitute the basis of said judgment of dismissal and its affirmance cannot be controverted in this case by Commerce Trust Company— estopped, as it is, by said admissions and adjudications." Plaintiff also says "the Federal Court based its decision and judgment upon the ground that, under the facts admitted by the motion to dismiss, the Federal Court could grant no relief, but that the State court could." The first part of that statement is correct, but plaintiff is mistaken in saying that the Federal court did or ever undertook to decide what the State court could do or to decide "that the facts alleged stated a cause of action under the state law", as plaintiff claims. In the opinion of the United States Court of Appeals, 187 F.2d 242, loc. cit. 249, it is said: "The only question presented on this appeal is the sufficiency of the complaint." See also 87 F.Supp. 438, loc. cit. 443. Thus it is apparent that no Federal question is presented.

 Plaintiff's request to file and have considered depositions in the case now pending in the Circuit Court of Jackson County must be denied. There is no authority for considering them on the issue involved herein of whether plaintiff's petition states a claim upon which relief can be granted. Likewise, because that is the issue involved, there is no reason for an order to stay this decision.

All motions are overruled.

All concur.