DOCTER and others, Respondents, vs. RIEDEL and another, Appellants.

*April 8 — April 30, 1897.*

(1) *Abuse of process.* (2) *Banks and banking: Application of deposit on note.*

1. To sustain an action for malicious abuse of process, the process must have been used to accomplish some unlawful end, or to compel the person against whom it runs to do some collateral thing which he could not legally be compelled to do. Thus, entering judgment on a judgment note after 10 o'clock at night, and immediately levying an execution thereon by forcibly breaking into the debtor's store, with the intent to injure his credit and business reputation, the creditor all the time knowing that the debtor was solvent and ready and willing to pay the note upon demand, does not render the creditor liable to such an action. MARSHALL, J., dissents, being of the opinion that if process to collect a judgment be executed in an unnecessarily harsh and oppressive manner, with a malicious purpose to injure the judgment debtor, such conduct constitutes an actionable wrong.

2. A bank having money on open account to the credit of the maker of a note which it holds is not obliged to apply the money thereon before bringing suit, even if it has the right to make such application without consent.

APPEAL from an order of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Reversed.*

This is an action for the abuse of process. The complaint, after alleging the copartnership of the plaintiffs, and the corporate character of the defendant the *German American Bank,* alleges that on the 31st of August, 1895, the plaintiffs executed to the bank their judgment note in the sum of $5,000, payable on demand with interest. A copy of said note is attached, and a warrant of attorney authorizes any attorney in any court of record to appear in such court, "in term time or vacation, at any time hereafter, and confess a judgment, without process, in favor of the holder of this

Docter and others vs. Riedel and another.

note, for such amount as may appear to be unpaid thereon, together with costs, and to waive and release all errors which may intervene in any such proceedings, and consent to immediate execution on said judgment."

The complaint further alleges that plaintiffs also executed to the bank a real-estate mortgage as security for the payment of said note, and that they had on deposit in such bank on the 11th of October, 1895, the sum of $850; that they were engaged in the business of merchant tailoring immediately adjoining the Plankinton House, in the city of Milwaukee, with a stock of goods of more than $13,000 in value, and that their total assets exceeded $43,000; that their liabilities, including the note, did not exceed $13,000; that they were perfectly solvent, and able to pay said note on demand, to the knowledge of defendants, and were doing a large and profitable business, and had many customers, and their standing in the commercial world was first class, and their credit good; that on the 11th of October, 1895, the defendant bank and the defendant *Riedel* conspired together for the purpose of destroying plaintiffs' credit and business, and without any demand or notice to plaintiffs, having first assigned said note to the defendant *Riedel*, caused a judgment to be entered in the circuit court for Milwaukee county on said note, and thereafter, about the hour of 10 o'clock in the evening of said day, caused an execution to be issued upon said judgment, and to be placed in the hands of the sheriff of Milwaukee county, who proceeded, about 11 o'clock P. M. of said night, to forcibly break into the store of plaintiffs, through the door leading from the hotel waiting room, and then and there levied on the entire stock of the plaintiffs.

The complaint further alleges that the note was assigned to defendant *Riedel* without consideration; that the levy was made at the unseasonable hour aforesaid without any notice to plaintiffs, and with the purpose of injuring their

credit and reputation, and that they had been at all times ready and willing to pay said note upon demand; and that they did, immediately upon being notified of said judgment and levy, pay the same to said defendants, and procured said levy to be released and said judgment satisfied. All of said acts of defendants are alleged to have been done maliciously, and with the intent of injuring the plaintiffs' credit and business reputation. The complaint further alleges that plaintiffs were put to great expense in obtaining the dissolution of said judgment and the release of said levy, and put to great inconvenience and expense, to their damage in the sum of $10,000.

To this complaint a general demurrer was interposed, which was overruled, and the defendants appealed.

The cause was submitted for the appellants on the brief of *Hoyt, Ogden & Olwell,* and for the respondents on that of *Julius E. Roehr.*

WINSLOW, J. The complaint charges, in brief, that the defendants, without previous demand, entered judgment upon a judgment note at 10 o'clock at night, and immediately issued execution thereon, and broke into the plaintiffs' store, and levied upon their stock of goods, with the malicious intent thereby to injure and destroy the plaintiffs' business credit and reputation, and that the plaintiffs, on being informed of the seizure, immediately paid the judgment and procured release of the levy. Plainly, the complaint does not state a case of malicious prosecution of a civil action, because the action ended favorably to the present defendants; thus demonstrating that there was not only probable, but perfect, cause for bringing it. *O'Brien v. Barry,* 106 Mass. 300.

It is claimed, however, that a cause of action is stated for abuse of process. The authorities upon the question of what will constitute a cause of action for abuse of process are

Docter and others vs. Riedel and another.

certainly in a state of some confusion, and frequently this
action seems to have been confounded with actions for ma-
licious prosecution, although they are essentially different
actions.    The leading case on the subject, perhaps, is the
case of *Grainger v. Hill*, 4 Bing. N. C. 212.  Here the plaint-
iff was arrested at a time when he could not procure bail,
and kept under arrest until he surrendered a ship's register.
The *capias* was a valid writ, regularly issued upon a good
cause of action, but it was used to effect an ulterior and
illegitimate purpose; and for that use there was held to be
a remedy in tort, regardless of the question whether the
original action was determined, or whether it was founded
on probable cause.  So, where an execution is issued upon
a judgment already paid, or for an excessive amount, and
goods are levied upon, a remedy is given.  In these and
similar cases, as said by an eminent text writer, " it is enough
that the process was wilfully abused to accomplish some un-
lawful purpose."    Cooley, Torts (2d ed.), 220, 221.    This is
probably the test, namely, whether the process has been
used to accomplish some unlawful end, or to compel the de-
fendant to do some collateral thing which he could not
legally be compelled to do.   *Johnson v. Reed*, 136 Mass. 421.

Applying this test to the case before us, we do not dis-
cover any cause of action stated.   The process of the court
has been used to collect a valid debt, and in precisely the
manner that the plaintiffs here consented to its use by the
judgment note.   By this instrument the plaintiffs authorized
its holder to enter judgment and issue execution at any time,
and this is all that has been done.   The defendants seem to
have acted strictly within their right.   The general rule is
that, where one exercises a legal right, his undisclosed mo-
tives are immaterial.   *Phelps v. Nowlen*, 72 N. Y. 39; *Ray-
croft v. Tayntor*, 68 Vt. 219, 33 L. R. A. 225.   We see no
reason why the rule should not apply here.   The defend-
ants having collected their debt in a way which they were

Docter and others vs. Riedel and another.

authorized to use, we cannot punish them for their secret motives.

The plaintiffs had an open account at the bank, upon which there stood $850 to their credit, and they claim that this should have been applied upon the note. Whether the bank had a right to make such an application without consent may be doubtful, but, whether it could do so or not, we see no reason for holding that it was obliged to do so.

*By the Court.*— Order reversed, and action remanded with directions to sustain the demurrer.

MARSHALL, J.   I understand the decision of the court to be to the effect that if a person is in the mercantile business, and unquestionably solvent, to the knowledge of another to whom he is indebted on a judgment note, the circumstances being that such other knows he can obtain payment of such note on demand, he may, notwithstanding, with the malicious purpose to destroy the credit of his debtor and break up his business, enter judgment on such note at 10 o'clock at night, immediately issue an execution thereon, and, in the absence of such debtor (his place of business being closed for the night), cause an officer to break into such place and take possession of such debtor's stock in trade, without having made any demand for payment of the debt, or demanding entrance to the store, or giving the debtor any notice whatever that immediate payment of the debt is required, thereby maliciously causing unnecessary and serious pecuniary injury to such debtor; and that such conduct constitutes no wrong, or, if it does, it is without legal redress.   If there is no remedy for such an official outrage, it must stand as a striking example of the insufficiency of our system of jurisprudence to deal with a class of serious malicious injuries that may break down a prosperous business, involve its owner in utter ruin, turn his condition of solvency to one of insolvency, and make him a beggar in a day.   I must re-

spectfully dissent from that doctrine, and protest that no such imperfection exists in the remedies afforded by our laws. That the reasoning upon which the decision of my brethren rests leaves such a wrong without a remedy is of itself an infallible test of its fallacy.

Actionable injuries, growing out of what is commonly called abuse of process, consist of two classes: One where the process of the court is not used for its legitimate purpose, but to accomplish by coercion some outside object not within the proper use of the process, as in *Grainger v. Hill*, 4 Bing. N. C. 212, cited in the opinion of the court, where the injured party was arrested on a valid writ in order to coerce him into delivering a ship's register, which was entirely outside of the legitimate purposes of the writ. My brethren test the complaint here solely by *Grainger v. Hill* and similar cases, and the elementary principle that abuse of process, strictly so called, is the use of process regularly issued to accomplish an unlawful end or to compel the defendant to do some collateral thing. Thereby the conclusion is easily reached that the complaint does not state a cause of action. But there is another class of malicious injuries growing out of abuse of process, sometimes designated as malicious misuse of process, that has been, to my mind, entirely overlooked, to which class the case made by the complaint belongs, and within the rules of which a good cause of action is clearly stated. Such class includes the use of process to accomplish its legitimate object, but in a reckless, unnecessarily oppressive way, with wrong intent to injure the person against whom the process runs. Such misuse is actionable, because of the unnecessary injury inflicted and the motive of it. The two classes of injuries referred to are recognized in *Mayer v. Walter*, 64 Pa. St. 283, which is a very instructive case on the subject. The court there held, in effect, that malicious abuse of process is where it is used for some unlawful object not within its scope, but that

malicious misuse of process may take place where no object but its proper and legitimate execution is contemplated. Here the object intended was the execution of the judgment. Defendant had a legal right to collect it, but the proceedings to that end were unnecessarily harsh and oppressive, and with bad intent; hence the actionable injury.

*Rogers v. Brewster,* 5 Johns. 125, which will be found cited by all standard text writers, touches this case at every essential point. The officer had ample opportunity to execute his writ by taking property that would not interfere seriously with the debtor's business. Instead of doing so, he took a horse from the team with which such debtor was at work, with intent to embarrass and injure him. In deciding the case the court said: "The constable appears to have executed the warrant in an unreasonable and oppressive manner, and with the avowed and malicious design to harass and oppress the plaintiff. The oppression of an officer in the execution of process is indictable, and a great abuse of the powers of a sheriff on execution has been held sufficient to make him a trespasser. If he be charged with a malicious and oppressive proceeding, a proper remedy for this abuse of power is a special action on the case, in which the malice and oppression must be made manifest. The seizing and selling of the horse in the case before us was without any just cause, so long as other property was shown which would have raised the money with equal facility. It was therefore a causeless and malicious proceeding. Where a ministerial officer does anything against the duty of his office, and damage thereby accrues to the party, an action lies." To the same effect are *Juchter v. Boehm,* 67 Ga. 534; *Snydacker v. Brosse,* 51 Ill. 357. In *Casey v. Hanrick,* 69 Tex. 44, the officer and the execution plaintiff, who ratified the officer's act, were held liable for the malicious conduct of the latter in executing the writ in a hasty and oppressive manner at a time when it subjected defendant and his family

to unnecessary hardship. Many cases of the same kind exist in the books, but time will not permit calling attention to them further than is necessary to show clearly my reasons for holding that the complaint in the instant case states a cause of action.

The whole subject might well rest on *Smith v. Weeks*, 60 Wis. 94. There the officer had a warrant to arrest Weeks in contempt proceedings. The latter was a locomotive engineer. He was at home all day, to the knowledge of the officer, and might have been arrested and the object of the writ satisfied, without seriously embarrassing him. It was his duty to go out with his engine at night, which the officer knew, yet for the purpose of embarrassing and unnecessarily oppressing Weeks, the officer waited till he was about to go out on his night run, and then arrested him. The court held that such conduct constituted an official outrage and a clear abuse of process. There were many aggravating circumstances which occurred after the arrest, but the court held clearly that the arrest itself, under the circumstances, and the motive of it, constituted abuse of process.

From the foregoing, the principle governing this subject may be stated thus: If process to collect a judgment be executed in an unnecessarily harsh and oppressive manner, with a malicious purpose to injure the judgment debtor, such conduct constitutes an actionable wrong. In executing such a process the officer must not be guilty of oppression, or make use of greater force or violence than the thing requires. If he does, he is guilty of an abuse of process, and liable for damages. Alderson, Judicial Writs, 514, § 179. Applying the above-stated principle to the complaint before us, the order overruling the demurrer to the complaint was obviously right, and should be sustained.