GRACE B. WHITE v. WM. C. SCARRITT, Appellant.—111 S. W. (2d) 18.

Division One, December 14, 1937.

Scarritt, Jones & North, John M. Cleary, John T. Harding, W. W. Graves, Edward S. North and Elliott H. Jones for appellant.

1006

*Roy W. Rucker* and *Fred J. Wolfson* for respondent.

GANTT, J.—Action for duress. Judgment for plaintiff for $2688.87, which includes interest. Defendants appealed to the Kansas City Court of Appeals. In that court the judgment against the McCoy Land Company was affirmed, and the judgment against Wm. C. Scarritt was reversed. On rehearing, the judgment against Scarritt was affirmed. [87 S. W. (2d) 672, 689.] However, said court deemed its ruling against Scarritt in conflict with Kelley v. Osborn et al., 86 Mo. App. 239, and transferred the case to this court. Plaintiff died pending appeal, and the cause was revived in the name of Edwin C. White, executor of her estate.

After matters of inducement, the petition alleged as follows: "For her cause of action plaintiff states that on the 2nd day of December, 1931, she executed a written option to Harry S. Truman, as one of the judges of the County Court of Jackson County, Missouri, under the terms of which option she agreed to sell Lots 1109 and 1110 in Block 77 of McGee's Addition in Kansas City,

Missouri, for the price and sum of $70,000.00. That it was understood between the parties at the time and was a matter of public knowledge that the county court was acquiring this property from plaintiff along with all the other property in said block for the purpose of erecting a new courthouse and jail thereon. That thereafter on January 9, 1932, the defendant, McCoy Land Company, acting by and through its president and attorney, William C. Scarritt, filed its bill in equity in the Circuit Court of Jackson County, Missouri, at Independence, seeking to enjoin Jackson County and the officers thereof from the sale of bonds which had been voted by the taxpayers to provide money for the erection of said new courthouse and jail.

"That when publicity was given to the fact the county court intended to purchase the block hereinbefore described for the purpose mentioned, plaintiff's tenants immediately vacated her property and the income from said property, from which plaintiff had been paying the taxes, insurance, and interest on the encumbrance, ceased. That all these facts were well known to the defendants and each of them.

"That the suit brought by the defendant, McCoy Land Company, through its president and attorney, the defendant, William C. Scarritt, was not brought in good faith, but for the purpose of annoying, vexing, hindering and delaying plaintiff in the sale of her property to the county under said option and agreement to purchase. That defendants knew plaintiff was an aged woman dependent entirely for her livelihood upon the income from the property hereinabove described; that the property was heavily encumbered; that the interest on the incumbrance thereon was long past due, that the taxes were delinquent and that, if the sale under the option was delayed, plaintiff would lose her interest in said property by foreclosure. That after the demurrer to the petition of the McCoy Land Company had been sustained, said McCoy Land Company, acting through its president and attorney, William C. Scarritt, demanded that this plaintiff pay to the McCoy Land Company and to the said William C. Scarritt the sum of $2450.00, and announced that unless said payment so demanded was paid, an appeal would be taken from the judgment sustaining the demurrer to the petition of the defendant, McCoy Land Company, so that the sale to the county of plaintiff's property could not be consummated within the time provided in said option. That the demand was oppressive, wrongful, and unconscionable, and made with the knowledge that because of the dire financial situation in which this plaintiff was placed, advantage could be taken of her. That in order to save, for herself, her equity in said property plaintiff agreed to and did pay to the said defendant, McCoy Land Company, a corporation, and to William C. Scarritt, its attorney and president, the said sum of $2450.00. That said

payment was made under the circumstances hereinbefore set forth, which destroyed the free agency of plaintiff and deprived her of the exercise of her free will. All of which was well known to the defendants and each of them.

"That the conduct of the defendants and each of them amounted to extortion, coercion and duress.

"Wherefore, plaintiff prays judgment against the defendant in the sum of $2450.00, and for her costs in this behalf laid out and expended and for interest on said sum from the 6th day of July, 1932, at the rate of six per cent per annum."

The owners of the lots in the block selected as a site for the court-house and jail are hereinafter designated the property owners.

On the property owners paying money to the McCoy Land Company, defendants abandoned the injunction suit. The agreement with reference to said abandonment was in writing. It was stipulated that the same was a part of the petition and a part of the record proper. The agreement follows:

"Articles of Agreement, made and entered into this 9th day of April, 1932, by and between McCoy Land Company, a corporation organized and existing under the laws of the State of Missouri, of the first part, and the undersigned property owners, of the second part, Witnesseth:

"Whereas, heretofore Jackson County acquired options to purchase and acquire title to all of the real property comprised in the city block bounded by Twelfth and Thirteenth Streets, Locust and Oak Streets, in Kansas City, Missouri, as and for a site for a new county courthouse and has indicated its willingness to pay therefor approximately $1,010,000.00; and,

"Whereas, first party has instituted a certain cause in the Circuit Court of Jackson County, Missouri, attacking the proceedings leading up and pertaining to the acquisition of said new courthouse site, numbered 367435, against Jackson County, Missouri, and certain officials thereof; and,

"Whereas, it is mutually desired by and between the said McCoy Land Company and the undersigned property owners to settle said controversy and to finally dispose of said suit;

"Now, therefore, for mutual considerations, it is agreed by and between said first party and said second parties as follows:

"(1) Each of the undersigned property owners is willing to and will, subject to the terms hereof, sell and convey that part of the property aforesaid by him owned, to Jackson County, Missouri, and make a good, clear and merchantable title thereto at and for the price and sum indicated opposite his or her signature, the aggregate of said prices being approximately $1,010,000.00.

"(2) Each of said owners forthwith will procure from the

Kansas City Title & Trust Company a title guaranty policy as to his or her land, in the usual form, in favor of Jackson County, or a preliminary memorandum that it will issue such a policy on stated conditions, and such owner forthwith will deposit with the said Title Company a good and sufficient deed or deeds conveying his said parcel of real property aforesaid to Jackson County, to be by said Title Company delivered to the said County upon its payment to the said Title Company of the purchase price thereof herein indicated.

"(3) Upon the deposit of such deed or deeds with the said Title Company by the owner, or by as many of them as are competent to make deeds, and upon satisfactory assurances to the Title Company, that the title of all other owners of property in said block will be acquired, the form of such orders, judgments and decrees to be made and entered in the above entitled cause numbered 367435 as shall be agreeable to the said court and as shall be effectual in accomplishing the final disposition of said cause shall be agreed upon by the parties to said cause, the same to be made and entered in said cause when defendants in said cause shall have entered into an agreement with a solvent bidder to buy such an amount of County Courthouse bonds as shall be sufficient to pay for said lands, and the said first party agrees to acquiesce in the judgment or decree of said court as may be made and entered as above expressed and to refrain from seeking to modify or change the said judgment or decree of said court either by appeal, writ of error or otherwise, and in addition thereto the first party, its agents and attorneys agree not to directly or indirectly institute or cause to be instituted any suit or suits directly or indirectly attacking or seeking to challenge in any way whatsoever the proceedings of the said County Court providing for the issuance of bonds, the proceeds of which shall be available and or be used in acquiring the aforesaid new county courthouse site and in constructing a new courthouse thereon.

"(4) The said Title Company is hereby given full and plenary power to and is instructed to disburse the money or funds it may receive on account of each owner as the purchase price of his or her property, to such person or persons as may be entitled thereto, for the purpose of paying off all liens and encumbrances on his or her property and to pay to the said McCoy Land Company a sum equivalent to three and one-half per cent of the full purchase price of his or her said property for the purpose of compromising and settling and disposing of its said suit, and for the other considerations herein expressed, and to pay the balance of such purchase price to the owner or to his or her order; provided, that if this agreement is not consummated to the extent of entering the said judgment or decree and paying the amount of the said three and one-half per cent of the

total purchase price to the McCoy Land Company within ninety days from this date either the majority in number or the undersigned owners or the McCoy Land Company may by written declaration to that effect terminate this agreement. Such declaration if made by said property owners to be delivered to McCoy Land Company or its attorneys of record, or if by the McCoy Land Company to any two of said property owners or Henry S. Conrad, their attorney. And time shall be of the essence hereof.''

In substance, the answer alleged that the agreement was a valid contract whereby Grace B. White agreed to pay $2450 to the McCoy Land Company for the considerations expressed therein; that the company complied with the agreement; that the Kansas City Title & Trust Company paid to the McCoy Land Company $2450 for said White, as provided in the agreement; that thereby the injunction suit against the county and its officers was compromised and finally disposed of in compliance with the agreement, and for that reason the company and Scarritt are not liable to plaintiff under the allegations of the petition. Further answering, defendants specifically and generally denied each and every allegation of the petition.

I. The overruling of the demurrer to the evidence is assigned as error.

(a) Defendant contends that the action was ''for money had and received;'' that the case was tried on that theory; that the Kansas City Title & Trust Company paid the $2450 to the McCoy Land Company; that he received from the trust company no part of the money, and for that reason the demurrer should have been sustained.

Under the general rule an action ''for money had and received'' should be against the person actually receiving the money. [48 C. J. 770.] The agreement provided that the $2450 should be paid to the McCoy Land Company. On the agreement becoming a part of the petition by stipulation, defendant filed a motion for judgment on the pleadings. The court overruled the motion and thereby construed the action in tort. Furthermore, it was in evidence and admitted in the petition that the money was paid to said company. The overruling of the demurrer again construed the action in tort. Thus it appears that the case was tried on the theory that it was in tort.

Even so, defendant argues that the action was ''for money had and received:'' He directs attention to the absence of the word ''damage'' from the petition. The word ''indebted'' and the words ''for the use and benefit of plaintiff also are absent from the petition. The absence of said words is not conclusive. It may be con-

sidered in construing the petition. He also directs attention to the prayer for the exact sum paid by plaintiff under the agreement as indicating the form of action. Plaintiff may have been damaged only said sum of money. The form of the action is determined from the substance of the petition.

The question has been ruled in Woodham v. Allen (Cal.), 62 Pac. 398, 399, as follows:

"Plaintiff might have declared on an implied contract, but she did not, but chose rather to set forth the tortious acts of defendants, showing that he had obtained money and goods from her by threats and menace, and then, after reciting the facts, the pleader, apparently to place the action where she wanted it, and where there could be no question that it was brought for a tort, concludes as follows: 'And now the plaintiff brings this action for the recovery of the said sum of four hundred dollars from the defendant, with interest thereon, claiming that the same was unlawfully extorted from her as aforesaid.'"

In the instant case the petition pleaded the facts and concluded as follows: "That the conduct of defendants and each of them amounted to extortion, coercion and duress." We rule that the action was in tort.

■ (b) Defendant also contends that the evidence failed to establish the claim of duress. In this connection he argues that the injunction suit is a "typical taxpayer's suit;" that the taxpayer could lawfully institute and prosecute the same, and that his motive in doing so is immaterial and cannot be questioned.

Of course, a taxpayer may seek relief from taxes believed unlawful. He may do so, even though his private or personal interest may be benefited or the private or personal interests of another may be injured by the institution and prosecution of a suit for relief. However, the privilege may not be used for an unlawful purpose. Under pretense of seeking such relief, he may not use the litigation to extort money from another. One may carry upon his person an unconcealed weapon. His motive may not be questioned. However, if he unlawfully uses the weapon, his motive in carrying the same may be for consideration.

It should be noted that the McCoy Land Company had no claim against Grace B. White. There had been no business relation between them. She paid no money to said company under threatened or pending litigation against her. The numerous authorities cited by defendant ruling such questions are without application. Furthermore, malicious attachment and malicious prosecution cases also are without application. The rule is stated by a standard text as follows:

"Whatever a man has a legal right to do he may do with impunity, regardless of motive, and if in exercising his legal right *in a legal*

*way* damage results to another, no cause of action arises against him because of a bad motive in exercising the right." [1 R. C. L., p. 319, italics ours.]

On the question of duress there was evidence as follows: At an election on May 26, 1931, the voters of Jackson County authorized the issuance of bonds to purchase a site and build thereon a courthouse, including a jail therein. On December 1, 1931, the court contracted for a ninety-day option to purchase the land bounded by Twelfth, Oak, Locust and Thirteenth streets for $1,010,000 as a site for the courthouse. Plaintiff owned two improved lots in said block encumbered for $27,000, for which she was to receive $70,000 under said option. Other sites had been suggested to the court. On December 5, 1931, the treasurer advertised for bids for bonds in the sum of $1,010,000 to purchase a site. The bids were to be submitted on January 11, 1932. On January 2, 1932, the court appointed a superintendent (Sec. 12061, R. S. 1929) to select the site. He selected the above-described block of land. The selection was approved by the court. Thereupon and on January 9, 1932, the McCoy Land Company, by its attorneys Scarritt, Jones & North, filed suit in the circuit court at Independence to enjoin the issuance and sale of said bonds. Defendant Scarritt is the senior member of said law firm and president of the McCoy Land Company. He testified that he was the "directing mind" in control of the injunction suit.

On January 11, 1932, the treasurer received only one bid. It was a very low bid, coupled with numerous conditions, and particularly required a disposition of the injunction suit. The court rejected the bid and directed the treasurer to negotiate a private sale of the bonds under Section 2911, Revised Statutes 1929, subject to the approval of the court.

The McCoy Land Company is incorporated for $300,000. Wm. C. Scarritt and E. S. Scarritt, his brother, own over fifty per cent of the stock. The order directing the institution of the injunction suit was approved by Wm. C. Scarritt, president, E. H. Jones, vice president, E. S. North, secretary, W. H. Scarritt, Frank S. Groves, T. R. Hunt and E. L. Scarritt, directors. The assets of the company consist of improved lots in Kansas City of the value of $75,000 or more. On January 1, 1932, its outstanding obligations were $96,244.09.

The injunction suit halted the purchase of plaintiff's property by the county. In the meantime plaintiff's tenants, thinking the property sold, vacated. The rent from the property was the only income of plaintiff to pay interest, taxes and other expenses. In this situation the property owners employed Attorney Conrad. He suggested to defendant that the property owners might recover damages from the McCoy Land Company and defendant if they continued to prosecute the injunction suit. Defendant was not convinced

of liability and refused to dismiss the suit. They had conferences extending over a period of eight weeks. During said time Mr. Conrad inquired if the injunction suit could be settled, and if so on what basis. Defendant suggested that the property owners pay $100,000 in settlement of the suit. He stated that if so settled he would pay $50,000 of said sum to the county treasurer for the benefit of taxpayers. Conrad did not submit the offer to the property owners. In a few days he reported to defendant that the county officers refused to be parties to such an adjustment of the litigation. Defendant then demanded $50,000. The property owners made a counter offer to pay $25,000. The offer was declined. Defendant then demanded of the property owners three and one-half per cent on the total amount of bonds to be sold. Conrad submitted the proposition to the property owners. He had doubts about the success of the injunction and so advised them. However, he stated that the litigation could be prolonged by appeal, and that the county court had stated that unless the litigation ended, a new site would be considered. Thereupon the property owners agreed to pay the three and one-half per cent to said company.

It should be stated that plaintiff is a widow and aged woman. During the eight weeks of negotiation with reference to the suit, she was without income, owed taxes and interest and was threatened with loss of her property by foreclosure under the mortgage. She frequently visited the meeting place of the property owners and was highly nervous. At the time she signed the agreement, she was hysterical and in tears.

Under the agreement, the Kansas City Title & Trust Company represented all parties, and through said company plaintiff paid to the McCoy Land Company $2450. On receiving three and one-half per cent, amounting to $35,350, defendant paid $5000 of the same to Conrad, attorney for the property owners. The McCoy Land Company, through its directors, then paid defendant from the $35,-350 a $2500 bonus "as compensation for extraordinary and unusual services already performed and yet to be performed in closing up the settlement of said case." The directors also paid Scarritt, Jones & North $13,500 from said sum for services. Defendant received thirty per cent of this attorney fee.

The amended petition in the injunction suit covers twenty-eight pages of the abstract and is entitled: "A Taxpayer's Suit to Enjoin the Levy of Unlawful Taxes." It alleged that the suit was brought for itself and other property owners who may desire to participate; that the court colluded with its superintendent to locate the courthouse on the land in question; that the issuance of bonds for a courthouse and jail cannot be lawfully submitted to voters as one proposition; that the court did not designate the newspaper in

which the notice for bids should be published; that the newspapers carrying the same did not circulate in financial and commercial circles; that the notice did not conform to the order of the court; that the court, in advertising for bids, did not limit the maximum rate of interest; that it did not provide an annual tax to pay the same and the principal within twenty years, and that the sale of the bonds would be a cloud upon the lands of taxpayers. The other allegations of the petition are feeble efforts at makeweight and without substance.

On application of plaintiffs, the venue was changed from Independence to the circuit court in Kansas City. In that court plaintiffs' (defendant here) petition for a change of venue from the county was overruled. He then petitioned this court to compel the change of venue. The petition was denied.

The petition for injunction was filed on January 9, 1932. On the Kansas City Circuit Court sustaining a demurrer, plaintiff's filed an amended petition. The agreement was signed by the parties on April 9, 1932. The case was at issue on April 18, 1932. On May 5, 1932, the cause was submitted to the court. On May 14, 1932, judgment was entered in favor of defendants. Plaintiffs filed motion for a new trial. On May 24, 1932, judgment was entered on the motion as follows:

"Now comes the plaintiff in the above-entitled cause and, upon its own motion, withdraws the motion for new trial, filed herein. Further, this plaintiff announces its intention irrevocably to not proceed further in the prosecution of this cause, and in consideration of the public interest and other considerations, receipt of which are hereby acknowledged, waives any right to appeal from any order issued herein and waives any right it has to sue out a writ of error in the above-entitled cause."

From this evidence the jury could find from the agreement and the judgment on the motion for a new trial that the suit was directed solely against the property owners and not in the interest of taxpayers; that defendant knew the suit would drive the property owners to him; that he toyed with them about the matter by demanding $100,000 and stating that he would pay $50,000 of said sum to the treasurer for the taxpayers; that in thus offering to divide with the taxpayers he evidenced a guilty conscience; that after judgment in favor of the county and its officers, in accordance with the compromise agreement, he held to the situation by filing a motion for a new trial, and that he did not withdraw said motion until convinced that he would receive the money from the property owners.

From the evidence, including the conduct of defendant as the "directing mind" in control of the suit, the jury also could find that

defendant did not have good reason to believe that the suit could be successfully maintained. Courthouses and jails are frequently in separate buildings. However, it is common knowledge that in quite a number of counties the jail is in the courthouse building. They are naturally related and such a construction would be economy. The proposal to issue bonds to build such a courthouse is not subject to the charge of doubleness. Furthermore, the allegations of the petition with reference to collusion between the superintendent and county judges in selecting the site, and the allegations with reference to the publication of notice for bids, are frivolous and without substance. There was substantial evidence tending to show duress, and the issue was properly submitted to the jury.

■ (c) Defendant also contends that no duress existed at the time plaintiff paid the money in question; that by paying the same she ratified the agreement, and for that reason cannot recover.

If the Kansas City Title & Trust Company had not paid the $35,-350 to the McCoy Land Company, the defendant could and no doubt would have instituted another injunction suit. Thus it appears that the duress was continuous and there was no question of ratification in the case.

■ (d) Defendant also contends that plaintiff cannot recover without placing the McCoy Land Company *in statu quo.*

The designation of the agreement signed by the parties as a compromise settlement of the suit is a misnomer. Plaintiff was not a party to the suit and could not settle the same. She signed the agreement, paid the money and received nothing in return. On defendant returning the money to plaintiff, the parties will be in their former positions. There will be no "typical taxpayer's suit" and plaintiff will have her money. [Maupin v. Mo. State Life Ins. Co., 214 S. W. 398.]

The court correctly ruled the demurrer to the evidence.

■ II. In plaintiff's instruction defendant challenges the following: "And if you further find that after an adverse ruling of the Circuit Court of Jackson County, Missouri, the defendants expressed an intention and in fact intended to perfect an appeal from the judgment of the Circuit Court of Jackson County, Missouri, to the Supreme Court of Missouri; . . . and if you further find that the defendants and each of them, through the defendant, W. C. Scarritt, announced that an appeal would be perfected in said case and that the purpose of said appeal was for the purpose of harassing, annoying and vexing the plaintiff and of compelling plaintiff to pay the defendants money to induce defendants to dismiss said bill in equity."

There was an adverse ruling on plaintiff's original petition, and there was substantial evidence from which the jury could find that

defendant intended to harass and compel plaintiff to pay money. There was no evidence that defendant announced that he would take an appeal. It was error to submit this question to the jury. However, there was substantial evidence from which the jury could find that defendant intended, if necessary, to take an appeal. The error could not have misled or confused the jury. It was not prejudicial.

We ruled other assignments of error on the instruction in ruling the demurrer to the evidence.

III. Defendant also contends that the court erred in admitting evidence tending to show the physical, mental and financial condition of plaintiff during the negotiations and at the time of signing the agreement.

It may be inferred that the physical, mental and financial condition of plaintiff was normal prior to the institution of the injunction suit. Clearly it was competent to show the effect of said suit on plaintiff's mind, health and property interests. If the suit did not affect her, there could be no duress. It was proper to permit plaintiff and others to testify as to said conditions after the filing of the suit and during the negotiations with reference to the same. Furthermore, it was proper to admit testimony tending to show that plaintiff had reason to believe that defendant could not successfully maintain the suit and that he might appeal from an adverse ruling of the trial court. These questions arose as a part of the negotiations and tended to account in some measures for plaintiff's condition of mind and health. Defendant cites O'Neil v. Crane, 67 Mo. 250; City of St. Louis v. Arnot, 94 Mo. 275, 7 S. W. 15, and Gordon v. Burris, 141 Mo. 602, 43 S. W. 642. They are without application.

The judgment against defendants McCoy Land Company and Wm. C. Scarritt should be affirmed. It is so ordered. *Frank, P. J.*, and *Hays, J.*, concur; *Douglas, J.*, not sitting.