**FEDERAL PHARMACAL SUPPLY, INC. d/b/a Federal Premium Mfg. Co., a division thereof, and National Sanitary Laboratories, Inc., Plaintiffs,**

v.

**Neil MURRY, Jr., d/b/a Noveltone and M & M Rubber Co., a corporation, Defendants.**

**Civ. A. No. 19466–2.**

United States District Court,
W. D. Missouri, W. D.

Dec. 29, 1972.

David Skeer, Kansas City, Mo., Max R. Kraus, Chicago, Ill., for plaintiffs.

Howard E. Bodney, Kansas City, Mo., for defendants.

## ORDER DISMISSING COUNTER-CLAIM

COLLINSON, District Judge.

This is an action for copyright infringement, trademark infringement and unfair competition. Plaintiffs seek an accounting, damages, and injunctive relief. Defendants have counterclaimed for abuse of process. Plaintiffs have moved the Court to dismiss the counterclaim under Rule 12(b)(6), F.R.Civ.P. for failure to state a claim upon which relief can be granted. Plaintiffs' motion to dismiss will be granted.

Defendants allege in their counterclaim that plaintiffs instituted this action for three illegal and abusive purposes: (1) to harass the defendants, (2) to force defendants to expend large sums of money in defending against the action, and (3) to preclude defendants from engaging in the sale and distribution of the alleged infringing novelty joke card. Defendants further allege that they have been damaged in the amounts of $2,500 for attorney's fees and $3,000 in lost profits. Defendants seek an additional $10,000 in punitive damages. These allegations do not make out a cause of action. for abuse of process under Missouri law.

Professor Prosser has clearly and succinctly defined the elements of abuse of process:

> The essential elements of abuse of process as the tort has developed, have been stated to be: first, an ulterior purpose, and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding. Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions. The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort. Prosser, Law of Torts § 115, at 877 (3d ed. 1964) (footnotes omitted).

In Moffett v. Commerce Trust Co., 283 S.W.2d 591, 599 (Mo.1955), the Missouri Supreme Court quoted and approved

Professor Prosser's definition and analysis of the elements of abuse of process.

Both plaintiffs and defendants suggest that Moffett v. Commerce Trust Co., *supra*, is the controlling case under the facts of this case. We agree. The *Moffett* case was an action for damages for abuse of process, in addition to several other related claims. The facts of the case center on extensive litigation in Missouri and Kansas regarding the estates of John and Thomas Moffett and two partnership estates in which the Moffetts were partners. John Moffett died testate. His will designated Thomas Moffett, his brother, as executor and named defendant Commerce Trust Company as alternate executor. After letters testamentary had been issued to Thomas Moffett, he was removed as executor on the ground of conflicting interests: Thomas allegedly was indebted to the partnership estates, and he and the partnership estates allegedly were indebted to the John Moffett estate. Thereafter, defendant Commerce Trust Company was appointed to administer the John Moffett estate and both partnership estates. Defendant instituted litigation to settle the estates. No less than 14 suits were brought by defendant. During the course of this litigation Thomas Moffett died. His widow, plaintiff in the principal case, was substituted. The most important of the 14 cases was decided in Kansas. A judgment of over $270,000 was rendered in favor of the John Moffett estate and against the Thomas Moffett estate and the partnership estates. With one of the 14 cases still pending, plaintiff initiated the principal action in the Circuit Court of Jackson County, Missouri, claiming that defendant Commerce Trust Company was a party to a conspiracy to fraudulently make use of legal proceedings to injure plaintiff and her testator-husband, Thomas Moffett, by commencing groundless actions in connection with the settlement of the John Moffett estate and the partnership estates. Circuit Judge Elmo B. Hunter (now United States District Judge for this District) dismissed the action for failure to state a cause of action.

On appeal, the Missouri Supreme Court upheld the dismissal. After quoting Professor Prosser at length, as we noted above, the supreme court by reference to two other cases carefully defined the elements requisite to state a cause of action for abuse of process in Missouri:

> White v. Scarritt, supra, 341 Mo. 1004, 111 S.W.2d 18 (1937) is a good example of proper process being used for an ulterior purpose. There defendants had brought a taxpayers' suit to determine the validity of an election (to incur indebtedness to buy land for a courthouse) seeking to enjoin the levy of taxes for the purpose authorized. The courthouse site had been selected and 90 day options taken from the property owners. Plaintiff's tenants had moved out and the options were about to expire. If that happened, a new site was to be selected and plaintiff would lose her advantageous sale and be left with vacant mortgaged property. Defendants used the threat of continuing the suit to compel plaintiff and other landowners to pay to them a fixed proportion of their sale price to get the suit dismissed before the option expired. Of course, the defendants had the right as taxpayers to bring such a suit but it acted wrongfully in using the suit for the purpose of extorting money from the property owners, which they did not owe and could not have legally been compelled to pay. The trouble with plaintiff's petition herein is that it is based on allegations of wrongful motives in commencing all of the litigation and on intrinsic fraud in carrying it on but shows a state of facts under which it was defendant's duty to have the matters in issue determined. It also shows that those issues of indebtedness to the estates were determined against plaintiff's

testator in actions which were proper for that purpose. A case in which no abuse of process was shown is Docter v. Riedel, 96 Wis. 158, 71 N.W. 119, 120, 37 L.R.A. 580, 65 Am.St.Rep. 40, where, although the motive was bad, the use of process was within the rights of the defendant. The court said therein that the test was: "whether the process has been used to accomplish some unlawful end, or to compel the defendant to do some collateral thing which he could not legally be compelled to do." That is exactly what was done in White v. Scarritt, supra, namely, the landowners were compelled to pay the Land Company money which they could not have been legally compelled to pay and for a matter collateral to anything involved in the pending action. However, in this case whatever the motive, the end sought was not unlawful, or beyond the authorized purpose of the process initiated, because it was to establish indebtedness to the estates represented by defendant and obtain judgments therefor. If there was intrinsic fraud in obtaining the judgments that was not abuse of process. Neither was plaintiff's testator or his estate compelled to do some collateral thing outside of and apart from judgments that could legally be obtained in these proceedings. Therefore, our conclusion is that the petition does not state a case of abuse of process. 283 S.W.2d at 599–600.

■ It is apparent from *Moffett* that defendants' counterclaim for abuse of process must allege (1) that plaintiffs instituted their suit in this Court for an ulterior and wrongful purpose, and (2) that plaintiffs committed some wilful act, be it a definite act or threat, in the use of the process which was in the nature of coercion to obtain some unlawful end or to compel defendants to do some collateral thing outside of and apart from that which could legally be obtained in these proceedings.[1] Although defendants' allegation of harassment may allege the first element, the counterclaim does not allege a wilful act sufficient to make out the second element.[2] Thus, the counterclaim does not state a claim for abuse of process.

In addition to *Moffett* and the two other cases discussed there, we note two additional cases in illustrating the type of wilful act necessary to the pleading of abuse of process. In In re Williams, 233 Mo.App. 1174, 128 S.W.2d 1098, 1104 (Ct.App.1939), an arrest warrant was used as a threat to compel payment of a debt collateral to the lawful purpose for the issuance of the warrant. In the leading English case, Grainger v. Hill, 4 Bing.N.C. 212, 132 Eng.Rep. 769 (1838), the defendant had the plaintiff arrested and imprisoned under civil process in order to compel him through duress to surrender the register of a vessel to which defendant had no legal right. Prosser, *supra* at 876. Defendants' counterclaim does not allege a wilful act of this nature.

■ The only act alleged in the counterclaim is the initiation of the lawsuit

[1]. The Missouri Supreme Court recognized a third element requisite to an abuse of process claim in National Motor Club of Missouri, Inc. v. Noe, 475 S.W.2d 16, 24 (Mo.1972) : " '(1) that the defendant made an illegal, improper, perverted use of the process, a use neither warranted nor authorized by the process, and (2) that the defendant had an ulterior motive or purpose in exercising such illegal, perverted, or improper use of process, and (3) that damage resulted to the plaintiff from the irregularity.' " No question has been raised regarding defendants' allegation of damages and we find it unnecessary to consider that issue. Nevertheless, we express serious doubt as to whether defendants have alleged damages cognizable in an action for abuse of process. *See* Gore v. Goreman's, Inc., 148 F.Supp. 241 (W.D.Mo.1956), appeal dism'd 244 F.2d 716 (8th Cir. 1957) ; McCormick, Damages § 109 (1935).

[2]. "The ulterior motive may be inferred from what is said or done about the process, but the improper act may not be inferred from the motive." Prosser, Law of Torts § 115, at 878 (3d ed. 1964) (footnotes omitted).

itself. That is not sufficient to make out the second element of abuse of process. Both Moffett v. Commerce Trust Co., 283 S.W.2d at 600, and White v. Scarritt, 341 Mo. at 1012, 111 S.W.2d at 22, make it abundantly clear that the authorized use of process is entirely within a party's rights and alone will not serve to state a claim for abuse of process. On this point, we are not unmindful of National Motor Club of Missouri, Inc. v. Noe, 475 S.W.2d 16 (Mo.1972). There, National Motor Club brought suits against Noe and other former employees for unfair competition in the courts of Missouri, Nebraska and Arkansas. Each action stated the same claim and sought the same relief. Noe, in his action for abuse of process, alleged that the filing of the multiple suits was done for several wrongful purposes, such as, to compel Noe to spend exorbitant sums in defending against the suits. In overruling the circuit court's dismissal of the case for failure to state a cause of action, the Missouri Supreme Court held that Noe's petition properly alleged a cause for abuse of process. 475 S.W.2d at 23–24. Though the only wilful act alleged was the filing of the suits, our decision here is not inconsistent. The *Noe* case turned not on the filing of one suit, but on the filing of three separate suits stating the same claim and seeking the same relief. In other words, the requisite wilful act was not the initiation of the first suit, a matter completely within National Motor Club's rights, but the initiation of the second and third suits. Such an allegation, however, is not before us in the instant case.

Since defendants' counterclaim does not allege a wilful act in the nature of coercion to obtain an unlawful end or to compel defendants to do some collateral thing that could not be legally accomplished in these proceedings, it is therefore

Ordered that defendants' counterclaim be, and hereby is, dismissed for failure to state a claim upon which relief can be granted.