956 F.2d 796
 Rory NITCHER, Appellant,
v.
John DOES; Newby; Macarthur Woodruff; Donald Edwards;
George Thompson; Donald Quarton; Kenneth Baysinger; John
Sydow; Henry Jackson; James Dearduff; George Adams;
David Corum; Gary Hill, Appellees.
 No. 90-1837.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 12, 1991.
Decided Feb. 10, 1992.
Rehearing Denied May 1, 1992.
 
 Curtis E. Woods, Kansas City, Mo., argued, (Mary Virginia Clarke, on brief), for appellant.
 Bruce Farmer, Asst. Atty. Gen., Jefferson City, Mo., argued, for appellee.
 Before LAY,* Chief Judge, BRIGHT, Senior Circuit Judge, and MAGILL, Circuit Judge.
 LAY, Chief Judge.
 
 
 1
 Rory Nitcher, a prisoner incarcerated in the Missouri Department of Corrections ("MDOC"), appeals the district court's judgment on a jury verdict denying his claims filed under Title 42 U.S.C. § 1983 (1988). Nitcher also appeals the jury verdict on a counterclaim awarding the MDOC and eleven individual prison officials (the "prison officials") actual and punitive damages on abuse of process arising from Nitcher's suit. The MDOC and the State of Missouri (the "State") joined the prison officials' counterclaim without having been named parties to the original action.[1]
 
 
 2
 In 1986, Nitcher began serving a forty-five-year sentence in the Missouri State Penitentiary[2] for his participation in the escape of his former cellmate, Bill Herron, which occurred while Nitcher was on parole. Shortly after being reincarcerated for his role in this escape, Nitcher was placed in segregation after prison officials discovered his involvement in another escape attempt. While in segregation, Nitcher filed four separate pro se civil rights complaints under section 1983. The district court allowed Nitcher to proceed on two of his claims against eleven prison officials. Nitcher's complaint asserted that during his thirty-three-day stay in segregation, the named officials unconstitutionally deprived him of access to a bible in violation of his right to freely practice his religion; and deprived him of access to a toothbrush and toothpaste in violation of his right to be free from cruel and unusual punishment.
 
 
 3
 In May of 1987, while en route to his first court appearance in the instant case, Nitcher attempted to escape. He succeeded in unlocking his leg irons and ran a short distance down the street before a guard restrained him. The guard suffered a serious shoulder injury in the struggle.
 
 
 4
 Subsequently, the prison officials as well as the MDOC and the State, filed a counterclaim against Nitcher for abuse of process. The MDOC and the State were not named as defendants and made no motion before the court to enter the action. The Attorney General simply added their names to the counterclaim. The counterclaim alleged that Nitcher filed his complaints in an effort to harass prison officials and to provide himself with the opportunity to escape. After the counterclaim was filed, Nitcher filed a motion requesting appointment of a trustee pursuant to section 460.010 of the Missouri Revised Statutes (repealed 1990 by H.B. 974, § A). The court denied this motion.
 
 I.
 
 5
 An extended discussion of Nitcher's constitutional claims is unnecessary. Viewing the evidence in the light most favorable to defendants, we conclude a reasonable jury could find that Nitcher was not denied access to a bible or the hygiene materials in question.[3] Thus, we affirm the judgment of the district court denying Nitcher's constitutional claims for relief.
 
 II.
 
 6
 The primary issues on appeal concern the damages awarded on the counterclaim. Nitcher urges that the award to the MDOC on the counterclaim should be reversed because neither the MDOC nor the State were ever served or made parties to the action.
 
 
 7
 Citing Will v. Michigan Department of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) and Monell v. New York City Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the MDOC contends that it was effectively named as a defendant because the eleven individual defendants were named in both their personal and official capacities. This reliance is misplaced. Neither case authorizes a state or state agency to counterclaim as a party when a state employee is sued in his official capacity.[4]
 
 
 8
 The MDOC alternatively contends that an action for prospective relief against a state official in his official capacity constitutes an action against the state itself. We disagree. In Kentucky v. Graham, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985), the Supreme Court held that "implementation of state policy or custom may be reached in federal court only because official-capacity actions for prospective relief are not treated as actions against the State."
 
 
 9
 We conclude the district court improperly awarded damages to the MDOC. We vacate the award.
 
 III.
 
 10
 As to the damages awarded the state officials, Nitcher claims that (1) the jury's verdict was tainted by the impermissible involvement of the State and the MDOC; (2) the evidence presented was insufficient to prove each requisite element of abuse of process; and (3) the evidence presented was insufficient to prove that the prison officials suffered damages.
 
 
 11
 Though the State and the MDOC were not proper parties to the action, their involvement was not so pervasive as to require reversal of the judgment in favor of the prison officials. In Lockhart v. Westinghouse Credit Corp., 879 F.2d 43 (3d Cir.1989), the Third Circuit held that it was not necessary to reverse the trial court's judgment in favor of plaintiffs despite the testimony of two plaintiffs who were erroneously allowed to join the age discrimination suit. In reviewing the question of whether improper joinder of plaintiffs resulted in reversible error, the court stated that the issue was "whether the jury's verdict is reasonable in light of the evidence presented...." Lockhart, 879 F.2d at 54. Here, there is no evidence that the wrongful participants confused the jury or offered testimony that would not have been otherwise available to each counterclaimant individually. Thus, we are satisfied that the court's error in allowing the MDOC and the State to participate in the trial did not prejudice Nitcher.
 
 
 12
 To determine the validity of Nitcher's second contention, we must examine Missouri law regarding the requirements for abuse of process. The Missouri Supreme Court has stated that the elements required to prove abuse of process are: "(1) [T]he present defendant made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process;[5] (2) the defendant had an improper purpose in exercising such illegal, perverted or improper use of process; and (3) damage resulted." Ritterbusch v. Holt, 789 S.W.2d 491, 493 (Mo.1990) (en banc); see also Wells v. Orthwein, 670 S.W.2d 529, 532 (Mo.Ct.App.1984) ("if the suit is brought for a collateral purpose, there is abuse of process."). The record here adequately supports the prison officials' claim that Nitcher (1) brought suit for the unwarranted purpose of attempting to escape from prison; and (2) actually used the judicial process in a manner for which it was not authorized (the attempted escape). Nitcher, however, contends that even if he brought the suit in order to provide himself with an opportunity to escape, the named defendants should not be entitled to damages because there is no "causal link" between their alleged injury (emotional distress) and the abusive act--his attempt to escape. In Ritterbusch, the defendant unsuccessfully attempted to extort payment of a civil claim by filing a criminal complaint in municipal court alleging that Ritterbusch maliciously damaged an automobile. Ritterbusch was found not guilty and filed suit for abuse of process. Both the trial court and the court of appeals held that "because Ritterbusch did not allege the wrongdoers had benefitted from their actions, the petition failed to state a claim for abuse of process." Ritterbusch, 789 S.W.2d at 492. In reversing the court of appeals, the Missouri Supreme Court held it was not necessary that the plaintiff "submit to the coercion of the suit" for there to be an abuse of process. Id. at 494. The court added that "[t]his is not to say the victim of the abuse is relieved of alleging and proving damages, but those damages can result from lost time and inconvenience in responding to the wrongdoer's institution of his action...." Id. (emphasis added); see also Claspill v. Craig, 586 S.W.2d 458, 461 (Mo.Ct.App.1979) (damages requirement satisfied by "evidence that the defendants had lost some time and had suffered some inconvenience because plaintiff's action was instituted....").
 
 
 13
 We find that Nitcher's escape attempt, like the extortion attempt in Ritterbusch, need not have caused direct injury to the prison officials. The fact remains that if Nitcher had not filed this suit in order to provide himself with escape opportunities, the prison officials would not have been required to testify. Nitcher filed this suit for an unlawful purpose; he used the judicial process in an unlawful manner; and damages resulted to the prison officials. In allowing this claim to stand, we must emphasize the importance of limiting our holding to the specific facts of this case: Nitcher brought this action in order to escape from prison. Our holding does not permit state and prison officials to recover against an inmate whenever that inmate brings suit which is subsequently determined to be frivolous. See Federal Pharmacal Supply v. Murry, 352 F.Supp. 278, 281 (W.D.Mo.1972) (defendant's allegation that plaintiff brought suit solely to harass defendant does not allege a "willful act" sufficient to make out a cause of action for abuse of process); Wells, 670 S.W.2d at 532 ("If the action is confined to its regular and legitimate function ... there is no abuse even if the plaintiff had an ulterior motive in bringing the action, or if he knowingly brought suit upon an unfounded claim.").
 
 
 14
 Finally, we must examine the evidence of the named defendants' injuries. Nitcher claims that the record does not contain evidence sufficient to justify the jury's award of actual damages. With regard to three of the prison officials (Donald Quarton, Henry Jackson and Kenneth Baysinger), we agree. Quarton's only testimony to injury consisted of responding in the negative when he was asked if he would rather spend his day in court rather than "running road graders and fishing." Neither Jackson nor Baysinger indicated that they suffered any injury at all due to the necessity of defending the instant action. The other eight officials presented minimal testimony regarding the emotional distress caused by Nitcher's suit. Though it is a close issue, we find the testimony of the other eight officials adequate to support the jury's award of actual damages. See Owen v. Owen, 642 S.W.2d 410, 415 (Mo.Ct.App.1982) (upholding trial court's award of actual damages despite fact that plaintiff's testimony was "brief as to the fact [defendant's] actions had caused her 'very much' mental anguish....").
 
 IV.
 
 15
 We vacate the award of $1000 punitive damages to each of the prison employees since the record contains insufficient evidence of "malice" directed toward the prison officials. "[W]here, under color of process, a person seeks to wreak his vengeance on an individual by harassing and insulting him, punitive damages may properly be allowed." 1 Am.Jur.2d, Abuse of Process § 26 (1962). Here, Nitcher brought suit in order to escape; not to wreak vengeance on the prison officials. Though his motive was wrongful, it has not been shown that he possessed the necessary "spite" or "ill will" toward the individual defendants.[6]
 
 V.
 
 16
 Nitcher argues that the court's judgment is void because no trustee was appointed under former section 460.010 of the Missouri Revised Statutes. Pursuant to McCurry v. Allen, 688 F.2d 581, 587 (8th Cir.1982), we hold that Nitcher was not entitled to the appointment of a trustee because he waived that right by initiating this suit. Nitcher correctly points out that the counterclaim in McCurry was compulsory. However, neither McCurry nor any other case cited by Nitcher holds that a prisoner maintains his right to a trustee simply because the asserted counterclaim is permissive not mandatory.
 
 VI.
 
 17
 We find no merit in Nitcher's claims that the district court committed reversible error by not allowing him to testify on rebuttal as to his motive for bringing this claim and by allowing the prison officials to present an undisclosed witness. Nitcher presented testimony regarding his motive for bringing the suit: He told the jury that he did not bring the suit in an attempt to escape and his motive was not vindictive. The undisclosed witness, Bruce Jinkerson, was a proper rebuttal witness to impeach Nitcher's claim that he had never asked any other inmates to lie for him in court. Assuming the court erred in admitting this testimony, Nitcher would not be entitled to a new trial or reversal because, as noted above, he failed to present sufficient evidence to support any constitutional claims.
 
 VII.
 
 18
 We affirm the district court's judgment denying Nitcher's constitutional claims and granting actual damages to eight of the eleven prison officials on their abuse of process counterclaim. We reverse the district court's award of actual damages to the MDOC and defendants Quarton, Jackson, and Baysinger and vacate the punitive damages awarded to all defendants. Because Nitcher's appeal of the MDOC's award was necessitated by the unauthorized counterclaim of the MDOC, we direct the MDOC to pay Nitcher's counsel $1000 as a reasonable attorney fee for services on appeal.
 
 
 
 *
 The Honorable Donald P. Lay was Chief Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted and took senior status on January 7, 1992, before the opinion was filed
 
 
 [1]
 The State dropped out of the action prior to the jury's verdict in an effort to avoid juror confusion regarding the relationship between the MDOC and the State
 
 
 [2]
 The Missouri State Penitentiary is now known as the Jefferson City Correctional Center
 
 
 [3]
 Two of Nitcher's own witnesses, Maurice Johnson and Ronald Davis, at least partially refuted Nitcher's claims, and the prison officials who testified on the subject stated that the items in question were available to inmates upon request
 
 
 [4]
 Ironically, as an affirmative defense, the Attorney General asserted the Eleventh Amendment bar on suits against state officials acting in their official capacity. See Cory v. White, 457 U.S. 85, 90, 102 S.Ct. 2325, 2328, 72 L.Ed.2d 694 (1982); Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974)
 
 
 [5]
 The use of process "usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation rather than the issuance or any formal use of the process itself, which constitutes the tort." W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 121, at 898 (5th ed.1984)
 
 
 [6]
 The prison officials claim Nitcher brought the suit in order to harass them, and this is sufficient reason to grant an award of punitive damages. We conclude the record fails to support the officials' claim that Nitcher's suit was meant to harass them. It does not follow that simply because an inmate's claims are without merit, the suit is meant to harass